UNITED STATES of America, Plaintiff,

v.

John D. SCHUERMANN, Defendant.

Crim. A. No. 91–10113–01.

United States District Court,
D. Kansas.

June 16, 1992.

D. Blair Watson, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Charles O'Hara, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on the defendant's motion to suppress evidence. The court held an evidentiary hearing in the matter on May 29, 1992, has considered the memoranda of the parties, and is now prepared to rule.

## I. *Background*

At approximately 2:00 p.m. on November 7, 1991, law enforcement officials from the Sedgwick County sheriff's department and the Drug Enforcement Administration (DEA) executed a search warrant at the residence located at 438 N. Edgemoor in Wichita, Kansas. The defendant John Schuermann resided at that address. The officers announced their presence at the front door and when they received no response, they broke through the front door with a hand ram. The ensuing search uncovered cocaine in the garage and in a drawer in Schuermann's bedroom. Approximately fifteen minutes after the search commenced, a 1985 Chevy Astro van pulled into the driveway. Schuermann got out of the van, and was promptly arrested by DEA Agent Darrell Presnell, who led Schuermann into the garage and read him his *Miranda* rights. Approximately two minutes after Schuermann got out of the van, Detective Robert Benton searched the van and discovered a package containing cocaine.

Schuermann was led into the residence and seated at the dining room table. He asked DEA Agent Larry Nichols if he could speak to an attorney, and Nichols advised him he had a right to do so. Schuermann and the officers carried on a continuing conversation that lasted approximately thirty minutes. There was a break of ten to fifteen minutes at one point, then Schuermann asked to speak to the officers again. Schuermann told Nichols and the other officers he was concerned about testifying against Hoenscheidt and concerned that his friends would turn against him. Schuermann then gave a statement describing the sources of his cocaine in Arizona.

## II. *Arguments*

Schuermann's motion raises three distinct issues: first, whether the search warrant authorizing the search of the residence was overbroad and lacked probable cause; second, whether the warrantless search of the van was justified under any exception to the warrant requirement; third, whether any statements he made while in custody were involuntary.

### A. Search Warrant

■ Schuermann contends there was no probable cause that evidence of drug trafficking would be found at his residence. He argues his residence was targeted merely because he knew the co-defendant, James Hoenscheidt.

When reviewing a magistrate's issuance of a search warrant, the court must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *U.S. v. Harris*, 903 F.2d 770, 774 (10th Cir.1990) (Citation omitted). The magistrate must make a practical, common sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The magistrate's determination of probable cause should be given great deference on review. *United States v. Martinez*, 764 F.2d 744, 746 (10th Cir.1985), (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2231, 76 L.Ed.2d 527 (1983)).

The affidavit in support of the search warrant authorizing the search of Schuermann's residence indicates DEA agents learned from a confidential informant that Hoenscheidt was involved in a cocaine trafficking organization. In the span of one week, the confidential informant had several meetings with Hoenscheidt to discuss cocaine purchases. Hoenscheidt was observed driving to and entering the residence at 438 N. Edgemoor immediately after arranging cocaine purchases with the confidential informant on two occasions, and Schuermann was observed entering Hoenscheidt's residence shortly after another cocaine purchase was arranged. These observations would tend to indicate that items connected with cocaine trafficking were located at 438 N. Edgemoor. The magistrate had a substantial basis for concluding probable cause existed.

■ Schuermann contends the search warrant was overbroad and failed to specify with particularity what items were to be

seized. The court in *U.S. v. Harris, supra,* restated the principles governing whether a warrant is overbroad:

> The Fourth Amendment requires that warrants "particularly describe the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Search warrants must be sufficiently particular in describing items to be seized to prevent a "general exploratory rummaging in a person's belongings." (Citation omitted) The description is sufficiently particular when it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." (Citations omitted) A warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.

903 F.2d at 775.

The search warrant listed twelve categories of items associated with cocaine trafficking. These categories included documentary evidence detailing a narcotics trafficking business, financial records reflecting the proceeds generated by such activities, and items such as weapons and drug paraphernalia.

Drug trafficking has many of the same attributes of legitimate businesses. For example, drug traffickers have suppliers, customers, and generate financial records. The illegal nature of the activity makes it necessary for persons engaging in these activities to conduct their affairs in a cloak of secrecy. As the *Harris* court recognized, the nature of a drug dealing business makes it difficult to list with any greater particularity the books and records to be seized which evidence this activity. *Id.* All of the items listed in the twelve categories of the search warrant in this case could reasonably be expected to found at a cocaine trafficker's residence. The warrant therefore meets the particularity requirements of the Fourth Amendment.

## B. Search of the Van

■ Schuermann argues the warrantless search of the van is not authorized by any exception to the warrant requirement.[1] It is a cardinal principle of Fourth Amendment jurisprudence that warrantless searches are per se unreasonable subject to a few specifically established and well-delineated exceptions. *California v. Acevedo,* —— U.S. ——, ——, 111 S.Ct. 1982, ——, 114 L.Ed.2d 619, 634 (1991). One such exception is the search incident to arrest. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). In the context of a search incident to an arrest of an occupant of a motor vehicle, the police may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1980).

In *United States v. Cotton,* 751 F.2d 1146 (10th Cir.1985), this circuit interpreted *Belton* to authorize the search of an automobile incident to arrest even though the defendant was handcuffed at the time of the search. *Id.* at 1148. The court stressed its belief in the necessity for a straightforward rule to guide police officers in these circumstances. *Id.* Other circuits have likewise held that the fact that the arrestee has been secured and the interior of the automobile is no longer within the arrestee's immediate control does not negate the applicability of *Belton*. *U.S. v. White,* 871 F.2d 41, 44 (6th Cir.1989); *U.S. v. Arango,* 879 F.2d 1501, 1505 (7th Cir. 1989), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990).

■ A valid custodial arrest is a necessary predicate for a search incident to an arrest. *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. As the owner of a residence where cocaine was found, there was probable cause to arrest Schuermann. Agent Presnell testified Schuermann was placed under arrest as he stepped out of his van. He was taken into the garage, and the ensuing search of the van took place ap-

---

**1.** Detective Benton initially testified he searched the van pursuant to the search warrant. The search warrant did not authorize the search of the van. The search was therefore warrantless, and must be justified under one of the exceptions to the warrant requirement.

proximately thirty seconds later. Under *Belton,* Detective Benton was entitled to search the entire passenger compartment of the van.

The search of the van is therefore authorized under the search incident to arrest exception.

### C. Custodial Statements

■ Schuermann argues any statements he made while in custody were taken in violation of his rights under the Fifth Amendment and should be suppressed.

Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements made by a person while in custodial interrogation are inadmissible unless the police inform the person of his rights under the Fifth Amendment. *Id.* at 444, 86 S.Ct. at 1612. In this case, Agent Presnell testified he read Schuermann his *Miranda* rights in the garage following the arrest. This occurred prior to Schuermann being taken inside the house. The court finds Schuermann was read his *Miranda* rights prior to being taken inside the house.

■ The government has the burden to establish that statements elicited during the custodial interrogation were the result of Schuermann's knowing and intelligent waiver of his privilege against self-incrimination and the right to retained or appointed counsel. *McNeil v. Wisconsin,* ── U.S. ──, ──, 111 S.Ct. 2204, 2207–08, 115 L.Ed.2d 158, 167 (1991). The court must assess the voluntariness of Schuermann's statements in light of the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Some of the factors that bear on that determination are the defendant's age, level of education, the location of the interrogation, the length of the detention, and the use of physical punishment such as deprivation of food, or sleep. *Id.*

Neither the character of the defendant nor the circumstances surrounding the interrogation indicate the statements were made involuntarily. Schuermann is fifty years old and possesses a high level of educational attainment. It also appears that he has been employed in jobs requiring a high level of responsibility. Finally, there was evidence that Schuermann had been arrested and convicted on a prior occasion and was familiar with the procedures attendant to being a defendant in a criminal case.

■ The interrogation took place in his residence and lasted less than one hour. Schuermann did express some personal reasons for making a statement, namely, his concern about the welfare of his son. Schuermann's internal motivations for wishing to make a statement do not render his statements involuntary, and the court did not find Schuermann's statements regarding his concern over the welfare of his son to be credible. Moreover, in order to find Schuermann's statements involuntary under the Due Process Clause, there must be a showing of coercive police activity. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986). Agent Nichols informed Schuermann he could consult an attorney and did not have to talk to the police, but that the government would appreciate his cooperation. Schuermann responded that he was an alcoholic and was concerned that if he testified his friends would turn against him. At various points during the interrogation, officers confronted Schuermann with items found during the search, including photographs of Schuermann and his son. Schuermann argues he was threatened and accused of child abuse. The court finds no credible evidence of such a threat, and specifically finds the conduct of the officers does not warrant a finding of police coercion.

■ After being read his *Miranda* rights, Schuermann had the right to break off the questioning at any time by indicating a desire to remain silent or by requesting to speak to an attorney. *Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975); *Arizona v. Roberson,* 486 U.S. 675, 677–78, 108 S.Ct. 2093, 2095–96, 100 L.Ed.2d 704 (1988). Although he asked Agent Nichols if he had the right to see an attorney, and Nichols

replied affirmatively, Schuermann did not invoke his right to discontinue the questioning. The officers were thus free to continue questioning Schuermann. Even if the court were to construe Schuermann's question to Nichols as a request to speak to an attorney, Schuermann initiated the further conversation with the officers. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Any statements he made after evincing "a willingness and a desire for a generalized discussion about the investigation" are admissible. *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2834–35, 77 L.Ed.2d 405 (1983). In sum, the court finds Schuermann made a knowing and voluntary waiver of his *Miranda* rights and his statements were not taken in violation of the Fifth Amendment.

Accordingly, defendant's motion to suppress evidence is hereby denied.

IT IS SO ORDERED.