Cheryl GUERRA, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 94–96.

Supreme Court of Wyoming.

June 1, 1995.

**450**

Leonard Munker, State Public Defender; Gerald M. Gallivan, Director, Defender Aid Program; and Darby L. Hoggatt, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., D. Michael Pauling, Mary Beth Wolff, Sr. Asst. Attys. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program; Sheryl Smith Lansing, Student Director; Elizabeth A. Chapman, and Bruce Horton, Student Interns, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

TAYLOR, Justice.

The search, on warrant, of appellant's home and her subsequent conviction on two counts of delivery of a controlled substance were predicated upon admissions against penal interest of a "customer" who faced similar charges. From her convictions, appellant prosecutes this appeal, attacking the validity of the search warrant and the district court's admission of evidence seized pursuant to that warrant. We affirm.

## I. ISSUES

Appellant, Cheryl Guerra (Guerra), states the issues as follows:

I: Whether the "Affidavit for Probable Cause" provides a sufficient basis for the issuance of a search warrant under the Fourth Amendment to the U.S. Constitution and Article I § 4 of the Wyoming Constitution where the warrant authorized a search for "telephone records, financial records, scales, packaging materials, seal-a-meal, receipts, and other items evidencing transaction involving the sale of marihuna (sic) in violation of Wyoming Statute § 35–7–1031(a)(ii)" ... and the specific allegations of the affidavit were limited to an informant's *interview that confessed* to drug transactions with appellant that allegedly occurred six and seven months before the affidavit, and Detective Shaw's belief based upon his training and experience with controlled substances that marijuana sales with outstanding debt usually are recorded by the seller.

II: Whether the good faith exception to the exclusionary rule applies in the absence of a valid search warrant, but where the warrant was issued upon the "bare bones" conclusion that certain records would exist in the place sought to be searched.

III: Whether the search of vehicles occurring during the search of the premises conducted pursuant to a search warrant is impermissible under the Fourth Amendment to the United States Constitution and Article I § 4 of the Wyoming Constitution because (1) the search warrant authorized only a search of the premises, not vehicles, (2) the so-called *automobile exception* is not applicable because there was no probable cause to search the vehicles nor any exigent circumstances and (3) it was not incident to a lawful arrest.

IV: Whether the motion to suppress the contents within appellant's purse should have been granted because the evidence was seized without a legal search warrant, the evidence was not seized incident to a legal arrest, and the evidence could not have been inevitably discovered.

V: Whether the plain view doctrine justifies seizing Exhibit 6, the blue memo book, in the absence of a valid search warrant.

VI: Whether the trial court erred in admitting into evidence a letter from defendant's daughter over a timely objection as to relevance, where the letter was clearly inadmissible hearsay and its admission constituted plain error.

(Emphasis in original.)

Appellee, State of Wyoming (State), states the issues somewhat more succinctly:

I.  Whether the county court had probable cause to issue the warrant for the search of appellant's residence.

II.  Whether all items seized pursuant to the search warrant were properly admitted.

## II.  FACTS

Guerra's troubles began on November 11, 1992 when she sold two ounces of marijuana to Karol Potter (Potter). The plot thickened when Potter resold a quarter ounce of the contraband purchased from Guerra, not realizing that the next customer in line was an operative of the Gillette, Wyoming police department. On December 17, 1992, Guerra sold an additional one quarter pound of marijuana to Potter, much of which was seized pursuant to a lawful search of Potter's residence by Gillette police the following day.

Almost six months later, on June 7, 1993, a Gillette police detective interviewed Potter, at which time Guerra was identified as Potter's source for marijuana. Potter specified five separate transactions, each beginning when she would call a particular telephone number in the Gillette calling area. Shortly after each call, an individual known to Potter as "Cheryl" would appear at Potter's residence with a quantity of marijuana. Potter indicated that Guerra had generally "fronted" her the marijuana (i.e., furnished the product on credit subject to later repayment) and provided the police detective with a physical description of "Cheryl," indicating that the woman lived near 84 Lumber, east of Gillette.

The police detective traced the telephone number used by Potter to Guerra's residence, located north of 84 Lumber. Despite the passage of nearly six months, Potter continued to owe Guerra approximately $750.00 for previously "fronted" marijuana. Common sense converged with the police detective's training and experience to suggest that records of the outstanding debt were likely to be kept by Guerra at her residence. On June 8, 1993, the police detective obtained a warrant authorizing a search of Guerra's residence for such records and other artifacts of the trade. The search yielded numerous small marijuana plants, several small but discrete portions of marijuana, notebooks, and a letter.

The district court denied Guerra's motion to suppress evidence seized in the search of her home, and a bench trial on the merits ensued. Timely pursuit of this appeal followed Guerra's conviction upon two counts of delivery of a controlled substance in violation of Wyo.Stat. § 35–7–1031(a)(ii) (1994).

## III.  SCOPE & STANDARD OF REVIEW

Guerra takes issue with the district court's refusal to suppress items seized from her home during a search conducted pursuant to warrant. Secondly, she attacks the admission into evidence of several items seized pursuant to that warrant, including a letter to her from her daughter proposing a transaction almost identical to those for which Guerra stands convicted.

In assailing the search of her residence, Guerra seeks the protection of Wyo. Const. art 1, § 4, as well as the Fourth Amendment to the United States Constitution. However, Guerra fails to distinguish state protections from federal coverage other than in her discussion of Wyoming's requirement that probable cause for issuance of a warrant be found within the four corners of the affidavit submitted therefor. Because that issue marks the full extent of Guerra's efforts to develop an independent state constitutional argument, it is the sole issue upon which we will address independent state grounds. *Wilson v. State*, 874 P.2d 215, 219 (Wyo.1994). *See generally, Saldana v. State*, 846 P.2d 604, 621–24 (Wyo.1993), Golden, J., concurring.

Nonetheless, Guerra enjoys the formidable benefits afforded by the Fourth Amendment

to the United States Constitution, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Application of those protections to the actions of state officers, by virtue of the due process clause of the Fourteenth Amendment to the United States Constitution, was made manifest in *Mapp v. Ohio*, 367 U.S. 643, 655–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961).

■ Like its Wyoming counterpart, the Fourth Amendment to the United States Constitution does not lay down a blanket prohibition upon *all* searches and seizures. It forbids only those which are unreasonable. *Jessee v. State*, 640 P.2d 56, 61 (Wyo.1982). The reasonability of any search or seizure may often depend largely upon whether the involved officer has first obtained a warrant. *State v. Munger*, 43 Wyo. 404, 407, 4 P.2d 1094, 1095 (1931). Where an officer lacks the time, foresight, or confidence in his case to first obtain such a warrant, the questioned search and/or seizure may be characterized as " '*per se* unreasonable,' " subject " 'only to a few specifically established and well delineated exceptions.' " *Kish v. State*, 642 P.2d 453, 455 (Wyo.1982) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). The burden clearly rests upon the state, in such cases, to establish reasonability by showing the existence and applicability of such an exception. *Jessee*, 640 P.2d at 61.

■ It does not necessarily follow, from the foregoing, that searches conducted pursuant to a warrant are, per se, reasonable, although "an independent determination on the issue of probable cause has already been made by a magistrate, thereby giving rise to a presumption of legality." *Malcolm v. United States*, 332 A.2d 917, 918 (D.C.App. 1975). The value of having first obtained a warrant may lie in a shifting of the *onus*

*probandi* with respect to the issue of reasonability: "It is well settled that on a motion to suppress evidence obtained by search warrant, the moving party has the initial burden of establishing that his rights were violated." *Id.; cf. United States v. Moore*, 22 F.3d 241, 243 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 238, 130 L.Ed.2d 161 (1994). Furthermore, the moving party must carry the burden by a preponderance of the evidence. *Davis v. State*, 859 P.2d 89, 93 (Wyo.1993).

■ Review of a trial court's denial of a motion to suppress evidence is predicated upon acceptance of the trial court's findings of fact, unless clearly erroneous. *Roose v. State*, 759 P.2d 478, 487 (Wyo.1988); *United States v. Caro*, 965 F.2d 1548, 1551 (10th Cir.1992). We must view the evidence in the light most favorable to the prevailing party. *United States v. Dahlman*, 13 F.3d 1391, 1394 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994).

General acceptance of a trial court's factual findings in a suppression hearing should not obfuscate our test for the *reasonability* of a search and seizure. Bruce T. Moats, Note, *Search & Seizure—The Clash Between the Fourth Amendment and Society's Interest in Effective Law Enforcement. State v. Welch*, 873 P.2d 601 (Wyo.1994), *reh. denied* (1994), XXX Land & Water L.Rev. 253, 268–69 (1995). Application of the "clearly erroneous" standard to factual findings occasioned by a suppression hearing is not an abdication of our responsibility for a *de novo* determination on the ultimate legal question of reasonability under the Fourth Amendment. *Wilson*, 874 P.2d at 218; *State v. George*, 32 Wyo. 223, 238, 231 P. 683, 687 (1924).

> On the mixed question of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry.

*Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 572 (10th Cir.), *cert. denied*, 502 U.S. 983, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991).

■ Like a trial court's findings of fact at a suppression hearing, decisions regarding admission of evidence shall be upheld unless clearly erroneous. *Nimmo v. State*, 603 P.2d 386, 392 (Wyo.1979). This court, however, shall engage in a *de novo* review of the search's reasonability under the Fourth Amendment.

## IV. THE WARRANT

■ Discussion of the search warrant in this case must start with recognition of Guerra's well supported argument concerning the more specific burden placed upon a reviewing magistrate by Wyo. Const. art. 1, § 4, when contrasted with that occasioned by the Fourth Amendment to the United States Constitution. We have frequently remarked upon the similarity of the protections for individual rights afforded by those two provisions. *Saldana*, 846 P.2d at 611. Guerra, however, appropriately directs attention to *State v. Peterson*, 194 P. 342, 345 (Wyo.1920), for the proposition that Wyoming's Constitution limits a reviewing magistrate's consideration to the four corners of the proffered affidavit in determining existence of probable cause.

Guerra's assertion that oral statements made before the magistrate may not be considered in determining probable cause is not, however, the precise state of the law. Rather, W.R.Cr.P. 41(c) provides, *inter alia:*

> Before ruling on a request for a warrant the judicial officer may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.

The record herein betrays no such supplementation; and so, having noted the exception to the general rule, we shall limit our consideration of probable cause to the four corners of the unembellished affidavit.

Guerra argues that the affidavit in support of the search warrant is fatally dependent upon unsubstantiated tips of an informant; the informant's tips concerned events too remote in time to the warrant's issuance; and, the affidavit bears insufficient factual indicia of the existence of the particular items sought, let alone that they might be found at Guerra's residence.

### A. USE OF AN IDENTIFIED INFORMANT

■ There can be no question that a law enforcement officer's faith in an informant or the veracity of that informant's tales is unavailing if the officer's affidavit cannot recite sufficient information to support an independent and objective determination that probable cause exists. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971). In *Whiteley*, 401 U.S. at 564, 91 S.Ct. at 1035, even legendary Wyoming Sheriff C.W. Ogburn's faith in his informant could not discharge Ogburn's duty, as affiant, to establish the informant's credibility and verify that informant's conclusions pursuant to *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 112–15, 84 S.Ct. 1509, 1512–14, 12 L.Ed.2d 723 (1964).

From inception, though, the ostensibly talismanic rubric of *Spinelli* and *Aguilar* provoked concerns from no less a libertarian than Justice Fortas, who warned that the two-pronged test was not "abracadabra:" [1]

> It is not a magical incantation, the slightest deviation from which will break the spell. Only its poorer examples are formalistic codes recited by a trial judge to please appellate masters.

*Time, Inc. v. Hill*, 385 U.S. 374, 418, 87 S.Ct. 534, 557–58, 17 L.Ed.2d 456 (1967), Fortas, J., dissenting. Such concerns were not lost on this court, which never expressly adopted and finally flatly rejected what Justice Brown termed "the technical and rigid requirements set out in *Aguilar* and *Spinelli.*" *Bonsness v. State*, 672 P.2d 1291, 1293 (Wyo.1983).

The decision in *Bonsness* was emboldened by the United States Supreme Court's contemporaneous abandonment of the "rigidly exacted" *Aguilar/Spinelli* test. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). *Bonsness* and

---

1. *Spinelli*, 393 U.S. at 438, 89 S.Ct. at 600, Fortas, J., dissenting.

*Gates* did not sound a retreat from established frontiers of the Fourth Amendment, so much as a redeployment along boundaries marked by common sense rather than inflexibility:

> "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*Gates,* 462 U.S. at 231–32, 103 S.Ct. at 2328–29 (*quoting United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982)).

■ Guerra wisely acknowledges the veracity and reliability of Potter based upon Potter's admissions against penal interest which " 'carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.' " *Bonsness,* 672 P.2d at 1293 (*quoting United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)).

The facts provided to the police detective by Potter were amenable to independent verification when the Gillette police quickly came into possession of samples of Guerra's product after each of the charged transactions—first, when Potter resold a portion of the contraband to an undercover operative and, later, by a search conducted upon Potter's residence one day after the second purchase from Guerra. On both occasions, chemical testing revealed Guerra's adherence to truth in advertising. Further verification came from a trace of Guerra's telephone number to a residence located, as Potter had suggested, in the vicinity of 84 Lumber.

**B. TEMPORAL PROXIMITY**

■ The affidavit in support of the challenged search warrant avers two marijuana purchases, made approximately six and seven months prior to the search. Guerra argues that such buys were so remote in time as to be stale and insufficient to underlie a valid warrant for search and seizure six months later.

■ Search warrants are temporally distinguishable from arrest warrants because the latter are exclusively concerned with "historical" facts, while the former recite historical facts sufficient to permit a magistrate's inference or deduction of a presently existing condition. 2 Wayne R. LaFave, *Search and Seizure,* § 3.7(a) at 75 (2nd ed. 1987). As a consequence, arrest warrants enjoy relatively protracted viability, while inferences or deductions drawn from search warrants may be quickly eroded by the forces of time. *United States v. Watson,* 423 U.S. 411, 432 n. 5, 96 S.Ct. 820, 832 n. 5, 46 L.Ed.2d 598 (1976), Powell, J., concurring. The rate of such erosion, however, varies greatly from case to case and is seldom amenable to precise measurement. Rather than being determined by the number of days or months between the facts relied upon and issuance of the warrant, timeliness depends upon " 'the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.' " *United States v. Snow,* 919 F.2d 1458, 1460 (10th Cir.1990) (*quoting United States v. Shomo,* 786 F.2d 981, 984 (10th Cir.1986)).

The foregoing logic does not serve to obviate the requirement that an affidavit show sufficiently recent facts to justify issuance of a warrant *at that time,* so much as it reemphasizes the need to determine temporal proximity "by the circumstances of each case." *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932).

Analyzing the affidavit in this case according to the criteria of *Snow* and *Shomo* suggests protracted viability for the inferences and deductions permitted, if not required, by that affidavit. Potter's *sub rosa* dealings with Guerra were not a one-time chance encounter, but a regenerating arrangement marked by at least five separate transactions. Regardless of the police detective's particular experience and knowledge in such affairs, it can safely be asserted that the things to be

seized (notations of "fronted" contraband), as business records of debts owed the record keeper, were of enduring utility to Guerra and likely to remain intact until such time as the debts were satisfied. *Andresen v. Maryland*, 427 U.S. 463, 478–79 n. 9, 96 S.Ct. 2737, 2747 n. 9, 49 L.Ed.2d 627 (1976).

When denying Guerra's motion to suppress, the district court found, in the unpaid debt, sufficient evidence that her crimes were of a continuing nature. That finding has not been shown to be clearly erroneous, nor can we conclude it to be constitutionally unreasonable. "[W]hen the activity is of a protracted and continuous nature, the passage of time diminishes in significance." *United States v. Sherman*, 576 F.2d 292, 296 (10th Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). However, it is reasonable to believe that financial records, such as those sought at Guerra's residence, would continue to exist for some time. *United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir.1990), *cert. denied*, 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991).

### C. PARTICULAR DESCRIPTIONS

Probable cause for issuance of a search warrant must include, *inter alia*, "facts sufficient to warrant a reasonably prudent and cautious man to believe * * * that there is evidence of the crime at the place to be searched." *Ostrowski v. State*, 665 P.2d 471, 478 (Wyo.1983). The Fourth Amendment expressly warns that "no Warrants shall issue, but upon probable cause * * * particularly describing the place to be searched, and the * * * things to be seized."

The Fourth Amendment made particularity a *sine qua non* for issuance of valid search warrants in response to the long standing English practice of issuing so-called general warrants. Such wide ranging and indiscriminate search and seizure powers were the

brainchild of Henry VIII, who (not surprisingly) found eager assistants in the Star Chamber for his efforts to thereby restrict and restrain a free press. *Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo.*, 367 U.S. 717, 724–29, 81 S.Ct. 1708, 1712–15, 6 L.Ed.2d 1127 (1961). In colonial America, general warrants manifested themselves as the despised "writs of assistance," affording revenue officers unfettered discretion to search for smuggled goods while providing major impetus to the American Revolution. 1 Thomas M. Cooley, *A Treatise on the Constitutional Limitations*, 615 (8th ed. 1927); *Stanford v. Texas*, 379 U.S. 476, 481–85, 85 S.Ct. 506, 509–12, 13 L.Ed.2d 431 (1965). The colorful Revolutionary sympathizer, John Wilkes,[2] succeeded in toppling the practice of general warrants in Britain, while Americans chose the Fourth Amendment as a bar to any recurrence. *Boyd v. United States*, 116 U.S. 616, 622–32, 6 S.Ct. 524, 528–33, 29 L.Ed. 746 (1886).

Vivification of the Fourth Amendment in the federal courts would have to await *Boyd* in 1886 (and would not penetrate to the state level until *Mapp*, 367 U.S. 643, 81 S.Ct. 1684, in 1961), but the requirements of particularity are rooted in this nation's bed-rock and remain central to any determination of a search warrant's validity. *Smith v. State*, 557 P.2d 130, 132–34 (Wyo.1976). In that light, Guerra suggests that the very existence of records detailing her transactions with Potter was a matter of speculation, let alone the proposition that such records could be found at her residence.

■ In assessing the affidavit's particularity, vis-a'-vis the place to be searched and the things to be seized, we are guided by the general principle that " '[d]ecided cases are helpful only in declaring the general rule, and are persuasive only insofar as they pres-

---

**2.** Though Benjamin Franklin deemed him "an outlaw * * * of bad personal character, not worth a farthing," John Wilkes' active support for the Revolution was greatest of any non–American "Son of Liberty." Pauline Maier, *From Resistance to Revolution*, 163–64 (1972). Equally popular on both sides of the Atlantic, Wilkes was a perennial thorn in the side of the British establishment, which imprisoned him lest he continue to express his favor for the Revolution as a Member of Parliament. Upon becoming particularly flustered with Wilkes, the Earl of Sandwich was driven to exclaim: " 'Pon my honor, Wilkes, I don't know whether you'll die on the gallows or of the pox [syphilis]." Without missing a beat, Wilkes shot back: "That must depend, my Lord, upon whether I first embrace your Lordship's principles, or your Lordship's mistresses." John Bartlett, *Familiar Quotations* 368 (15th ed. 1980).

ent similar facts * * *.' " *Smith*, 557 P.2d at 133 (*quoting Garhart v. United States*, 157 F.2d 777, 779 (10th Cir.1946)). When a credible informant, who had purchased illicit drugs from the defendant, provided law enforcement officers with the location of the defendant's trailer home and those officers verified that location, a reviewing court found a sufficient basis upon which to issue a search warrant, declaring that "affidavits much less detailed have formed an adequate basis for establishing probable cause." *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir.), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986) (cited with approval in *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986)).

■ Guerra's two sales of marijuana to Potter may have been sufficiently remote in time as to render a warrant void, particularizing additional marijuana as the thing to be seized, for reliance on stale information. *United States v. Fairchild*, 774 F.Supp. 1544, 1552–53 (W.D.Wis.1990); *but see United States v. Cochrane*, 715 F.Supp. 23, 30–31 (D.R.I.1989), *rev'd*, 896 F.2d 635, 641–42 (1st Cir.), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). The instant case is distinguishable, though, because the stated objective of the search was not additional product, but business records based upon prior transactions for which Guerra had yet to be paid.

The affidavit herein recites the police detective's belief, based upon his training and experience in the investigation of drug trafficking, that those engaged in delivery will utilize a record keeping system to document their sales. Drug trafficking has been observed to bear many attributes of "legitimate" businesses, including generation and retention of business records. *United States v. Schuermann*, 793 F.Supp. 1035, 1038 (D.Kan.1992). Regardless of training and experience, at least one court has called it "logical to assume" that persons engaged in the delivery of controlled substances will keep related records in concealed places. *Van Buren v. State*, 823 P.2d 1258, 1263 (Alaska App.1992). Absent contrary indications, such concealed places are most likely to be where those persons live. *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986); *Mustafoski v. State*, 867 P.2d 824, 828 (Alaska App.1994).

■ In determining the existence of probable cause, a magistrate is entitled to rely upon practical considerations of everyday life. *Anthony v. United States*, 667 F.2d 870, 874 (10th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982). In the case at hand, of course, the practical importance of record keeping to Guerra was significantly enhanced by her extension of a $750.00 credit to Potter. Records of indebtedness have been regularly and scrupulously kept since the memory of man runneth not to the contrary. Although we admit to the possibility, this court has yet to encounter a dealer in illicit drugs whose motives for such risky business were so eleemosynary as to allow forgiveness of a $750.00 debt. Furthermore, the Tenth Circuit Court of Appeals has recognized that courts often rely on the opinion of police officers as to where contraband may be kept. *United States v. One Hundred Forty–Nine Thousand Four Hundred Forty–Two and 43/100 Dollars ($149,442.43) in United States Currency*, 965 F.2d 868, 874 (10th Cir.1992).

In summary, we reaffirm the common sense approach to the process of assessing the constitutional sufficiency of search warrant affidavits. Based upon the facts and circumstances set forth in the affidavit with the permissible inferences which might be drawn therefrom, the issuing magistrate could discern a fair probability that evidence of a crime would be found at Guerra's place of residence.

## V. GOOD FAITH

■ Post–*Mapp* cases have established that the exclusionary rule is not a personal right so much as a strong deterrent to police misconduct violative of those Fourth Amendment rights which are personal. *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). Viewed in that context, application of the exclusionary rule should occur "only in those 'unusual' cases in which its purposes would be served, i.e., in which it would deter police misconduct."

*Medlin,* 798 F.2d at 409. Otherwise, the so-called "good-faith exception" to the exclusionary rule finds application in those cases where "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984); *cf. Massachusetts v. Sheppard,* 468 U.S. 981, 988–91, 104 S.Ct. 3424, 3427–29, 82 L.Ed.2d 737 (1984).

■■■ Invocation of the good faith exception presumes that officers executing a warrant do so with a " 'reasonable knowledge of what the law prohibits.' " *United States v. Leary,* 846 F.2d 592, 607 (10th Cir.1988) (*quoting Leon,* 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20). The question becomes whether such officers could reasonably believe that the affidavit and resultant warrant are valid. *Id.* Those circumstances, set out in *Leon,* under which such a belief cannot be reasonable, have been summarized as follows:

> "(1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware,* 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978));
> (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo Ji Sales, Inc. v. New York,* 442 U.S. 319 [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979));
> (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11 [95 S.Ct. 2254, 2265, 45 L.Ed.2d 416] (1975) (Powell, J., concurring)); or
> (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard,* 468 U.S. 981 [104 S.Ct. 3424, 82 L.Ed.2d 737] (1984))."

*United States v. Corral–Corral,* 899 F.2d 927, 933 (10th Cir.1990) (*quoting United States v. Gant,* 759 F.2d 484, 487 (5th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985)). Guerra has advanced arguments based upon the first three issues identified in *Leon,* and we shall treat those issues sequentially.

### A. FALSE AFFIDAVIT

■■■ Guerra contends that the police detective misled the issuing magistrate by alleging, in his affidavit, that "[Guerra] sold one quarter ounce of that [marijuana] to an individual who was acting as a confidential informant in another investigation." Because the police detective admitted at trial that Guerra had never sold marijuana directly to the confidential informant involved in the case, Guerra contends that the affidavit in her case was deliberately falsified, and any evidence seized as a result should be suppressed in order to deter such wrongful conduct.

■■■ These allegations are procedurally misplaced, not having been made prior to trial. Pursuant to *Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), a defendant who feels thus aggrieved must make a preliminary showing of intentional or reckless falsity, together with a demonstration that the affidavit is insufficient, absent the false statements, after which such claims must be carried by a preponderance of the evidence at a suppression hearing. An affiant's negligent or innocent mistakes will not satisfy such a defendant's burden. *United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir.1988); *Davis,* 859 P.2d at 94.

In light of his testimony at trial, it appears likely that the police detective negligently employed Guerra's name when it was actually the named informant (Potter), who sold "that mari[j]uana" to the confidential informant. More to the point, Guerra's acknowledgment of the named informant's credibility for purposes of the search warrant means that the false statement offers nothing of material value to the affidavit, being strictly cumulative of the named informant's earlier marijuana purchases from Guerra.

## B. ABANDONMENT OF JUDICIAL DETACHMENT

Guerra also created no record in support of her contention that the magistrate who issued the challenged search warrant abandoned his judicial role or failed to perform his duty in a neutral and detached manner. Rather, Guerra suggests that if her argument concerning a lack of probable cause to support the warrant is correct, then it must follow that the magistrate blindly placed his stamp of approval on an unsupported warrant.

■ There can, of course, be no question that any application for a warrant authorizing search and seizure must be reviewed with neutrality and detachment by a judicial officer. *Coolidge v. New Hampshire*, 403 U.S. 443, 449, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564 (1971) (*quoting Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)). That officer must be "independent of the police and prosecution[.]" *Shadwick v. City of Tampa*, 407 U.S. 345, 348, 92 S.Ct. 2119, 2122, 32 L.Ed.2d 783 (1972). It is clearly inappropriate and unacceptable for such an officer to be in collusion with the police or the prosecution, as by "allow[ing] himself to become a member, if not the leader, of [a] search party which [is] essentially a police operation." *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 327, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920 (1979).

■ However, for so long as reasonable minds may differ as to the presence *vel non* of probable cause, a subsequent finding of its absence cannot, without some additional showing, suffice to impugn the neutrality or detachment of the magistrate issuing the warrant. *United States v. Cardall*, 773 F.2d 1128, 1132–33 (10th Cir.1985). Although persuasive authority on this point is at a premium, it will not be assumed that the issuing magistrate has abandoned his neutral and detached role absent some evidentiary showing of such. *Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974). Without such a showing, Guerra's argument with regard to the magistrate's neutrality and detachment is unavailing. *United States v.*

*Shelton*, 742 F.Supp. 1491, 1499 (D.Wyo. 1990).

## C. LACK OF INDICIA

■ Borrowing her phraseology from *Leon*, Guerra asserts that the affidavit in her case was a "bare bones" job, devoid of facts sufficient to establish the existence of probable cause. *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422. *See, United States v. Cook*, 854 F.2d 371, 373 (10th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). A "bare bones" affidavit is one which contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir.1992).

■ The threshold showing necessary to a determination of whether an officer relied in good faith upon a search warrant pales considerably next to that required for a finding of probable cause:

"When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support. . . . It is only when the [officers'] reliance was wholly unwarranted that good faith is absent."

*Williams*, 897 F.2d at 1039 (*quoting Cardall*, 773 F.2d at 1133) (emphasis in original). Here, Potter, acknowledged by Guerra to be credible for purposes of warrant assessment, purchased a substance which proved to be marijuana by calling Guerra's home telephone and placing an order. Such information, combined with verification of Guerra's residence, has been held more than sufficient to satisfy the factual basis requisite to a demonstration of reasonable good faith. *Medlin*, 798 F.2d at 409.

In this case, the police detective acted in good faith, placing reasonable reliance on the legality of a warrant obtained from a neutral and detached magistrate. In choosing to address the legal sufficiency of the search warrant pursuant to the Fourth Amendment prior to this finding of good faith, we have chosen to address those issues in the sequence given preference in *Leon*. Such

treatment avoids the danger of "freezing" Fourth Amendment jurisprudence through needless summary dispensation on the good faith issue alone. *Dahlman*, 13 F.3d at 1397.

## VI. ADMISSION OF EVIDENCE

Regardless of the search warrant's validity, Guerra assails the district court's admission of testimony regarding small amounts of marijuana seized from vehicles belonging to Guerra's housemate, as well as attacking admission into evidence of a letter to Guerra from her daughter, proposing a transaction almost identical to those Guerra engaged in with Potter.

### A. MARIJUANA SEIZED FROM VEHICLES

Guerra complains that evidence in the form of small quantities of marijuana was illegally seized from two vehicles adjacent to her residence. Although the record is incomplete in this regard, it appears that the vehicles belonged to Guerra's housemate and that one was parked alongside the residence while Guerra arrived in the other during the course of the search.

The prosecution did not seek admission of that marijuana at trial, and the testimony concerning the seizure was admitted without objection. Therefore, Guerra's belated protest must be weighed on the balance of plain error. *Porth v. State*, 868 P.2d 236, 242 (Wyo.1994). Plain error can be assigned only when "(1) the record clearly shows the incidents alleged as plain error; (2) [Guerra] demonstrates the violation of a clear and unequivocal rule of law; and, (3) it is shown that a substantial right of [Guerra] was materially prejudiced." *Lobatos v. State*, 875 P.2d 716, 721 (Wyo.1994).

The fragmentary record on this point does not clearly reflect where the vehicles were with respect to the residence or the extent to which Guerra asserted dominion or control of them. Nonetheless, we assume, without deciding the issue, that Guerra has standing to challenge the search of her companion's vehicles.

The rule of law in the case is clear and unequivocal:

A search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein. * * *

*     *     *     *     *     *

We believe that the better rule in these circumstances is to define the scope of the warrant to include those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled.

*United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir.1990); *accord United States v. Sturmoski*, 971 F.2d 452, 458 (10th Cir.1992). No violation of that rule can be found upon the record of this case.

The defense theory was that Guerra had, in fact, purchased marijuana from Potter rather than selling to Potter. Assuming, *arguendo*, that the marijuana found in the vehicles should not have been admitted, Guerra's defense would still have been obliged to deal with the issue of possession by virtue of other small quantities located in her residence at the time of the search and admitted by the district court without objection. The presence of small amounts of marijuana in her companion's vehicles was, at best, cumulative and cannot be said to have materially prejudiced Guerra's theory of the case.

### B. THE DAUGHTER'S LETTER

A letter, Exhibit #5, was recovered from Guerra's purse after she arrived at her residence during the course of the search. Guerra objected to the admission of Exhibit #5 at trial on the basis of relevance, and renews that objection here on the theory that the letter was inadmissible hearsay. Pertinent portions of that letter read, verbatim, as follows:

May 19, 93

Dear Mom;

*     *     *     *     *     *

Listen, we have 280.00 dollars left. Now that could cover us partially on a quarter

lb., but seriously mom that isn't gonna get us through until the middle of next month. * * * I have food to worry about, diapers, gas, [etc]. With all the stress going on we can't go without weed.

*     *     *     *     *     *

So what I was hoping if there is any chance you could cover me 470.00 dollars for the balance of * * * a half lb. which would be 750.00 Right? This way I could sell 6 ozs. for 160.00—which would add up to 960.00. We can keep 2 oz. I shouldn't have any problem to recap in the process. I could possibly get a little cash for myself & maybe return a quarter lb. so you could make some cash off the deal. * * * Otherwise I have know [sic] where to go! So please give me a great deal of thought & get back w/me ASAP!

*     *     *     *     *     *

Love you all!

Kiss–n–Hugs.

Laneya

A marginal notation on the first page of Exhibit #5 reads as follows: "(I will have 400.00 for the Q lb. but I still want to know about half lb.)"

■■■ Guerra makes a perfunctory argument here that her objection on the grounds of relevancy should have been sustained by the district court because the letter is dated some five months after the last transaction upon which she stands convicted and is therefore lacking in probative value. W.R.E. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■■■ A trial court's decision on the admissibility of evidence will be disturbed on appeal only for clear abuse of discretion, and it is incumbent upon an appellant to demonstrate such abuse. *Boggs v. State,* 589 P.2d 839, 840 (Wyo.1979). Exercise of discretion includes, *inter alia,* rulings with respect to the relevance and remoteness of proffered evidence. *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs,* 790 P.2d 663, 673 (Wyo.1990). In determining whether a district court has abused its discretion, " 'the ultimate issue is whether or not the court could reasonably conclude as it did.' " *Gaines v. Doby,* 794 P.2d 566, 570 (Wyo.1990) (*quoting Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980)) (quoted with approval in *Davis,* 859 P.2d at 93).

Guerra's extension of credit to Potter was not a necessary element of the offenses. It was, however, central to the district court's factual finding that the alleged activities were of a "continuing nature," thus infusing the warrant with protracted viability, coming as it did almost six months after the last alleged transaction. If, indeed, Exhibit #5 was written on May 19, 1993, between the last charged transaction and execution of the search warrant, the district court could reasonably conclude that it came into being during the period of Guerra's continuing criminal behavior.

At trial, Guerra denied that she had supplied Potter with marijuana on credit, insisting that Potter was the contraband's source. By manifesting the unspoken belief of Guerra's daughter that Guerra might be willing to "front" some marijuana, Exhibit #5 lends credibility to Potter's testimony and falsity to Guerra's version of events. In a case which hinged upon whose version of events the finder of fact ultimately accepted, Exhibit #5 was not only relevant, it was a dagger in the heart of the defense's theory of the case. *Wehr v. State,* 841 P.2d 104, 109 (Wyo.1992).

■■■ In evaluating Guerra's hearsay objection, raised for the first time on appeal, we raise the bar several pegs, from an abuse of discretion standard to that of plain error. The first element of a plain error showing would appear to have been satisfied insofar as the parties agree, and the record is clear, that Exhibit #5 is, in fact, a letter to Guerra from her daughter and was admitted into evidence over a relevance objection at trial. Furthermore, the text of that letter is not in dispute.

Step two in plain error analysis requires location of a clear and unequivocal rule of law. W.R.E. 801(c) defines "[h]earsay" as "a statement, other than one made by the de-

clarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined as "(1) an oral or written assertion or (2) non-verbal conduct of a person, if it is *intended* * * * as an *assertion.*" W.R.E. 801(a) (emphasis added). No amount of brute force would seem sufficient to force the square peg of Exhibit #5 into the round hole of W.R.E. 801(c). As Guerra's appellate brief points out, the letter is much less a statement than a proposal or offer, and the truth or falsity of the matter asserted (that Guerra's daughter wanted to buy marijuana on credit for resale) is of little or no moment to Guerra's case.

Professor Charles T. McCormick has labeled that place occupied by evidence such as this as *The Borderland of Hearsay*, 39 Yale L.J. 489 (1930). The most noteworthy example of that borderland's inhabitants is found in the hypothetical question of whether it would be hearsay, in trying to prove seaworthiness of a particular vessel, to offer evidence that the ship's deceased captain, "after examining every part of the vessel, embarked in it with his family * * *." *Wright v. Doe d. Tatham*, 7 Ad. & E. 313, 388, 112 Eng. Rep. 488, 516 (1837). Some scholars and courts have perpetuated the term "implied assertions" as coined by Baron Parke in *Wright. See* Roger C. Park, *"I Didn't Tell Them Anything About You": Implied Assertions as Hearsay Under the Federal Rules of Evidence*, 74 Minn.L.Rev. 783 (1990) and *United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky.1980). Professor Mueller views this as "unfortunate terminology," observing:

> [B]ehavior may be important in both its assertive and its performative aspects, so the term assertion does not adequately describe what is going on. It becomes wiser to see the blend and speak of "mixed act and assertion" or of "statements having performative aspects" or "actions having assertive aspects," for these cumbersome but broader descriptions capture the reality better.

4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 391 at 101 (2nd ed. 1994) (footnote omitted).

Viewed in those terms, the assertive or verbal part of Exhibit #5 is an expression of a desire, on the part of Guerra's daughter, to enter into a business transaction virtually indistinguishable from those for which Guerra was charged. More important, though, is the performative aspect of Exhibit #5, manifesting itself in both the daughter's delivery of the letter to Guerra and Guerra's subsequent retention of that letter for the better part of three weeks. The nature of the letter's request lends gravity to both actions. Here, after all, is no idle chatter, but an inducement to criminal enterprise with the attendant danger of serious jeopardy. The daughter's act of delivering the letter to her mother dramatically manifests her unspoken belief that Guerra does these sorts of things. *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir.1990).

Central to this analysis is the proposition that neither the daughter's words nor her acts were intended as an assertion that Guerra was dealing in marijuana. The Advisory Committee's note to F.R.E. 801 clarifies the import of this distinction:

> The effect of the definition of "statement" [in F.R.E. 801] is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. * * *
>
> * * * [N]onverbal conduct, however, may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred.

The Advisory Committee's note goes on to point out that questions of candor and sincerity are virtually eliminated by the circumstances surrounding non-assertive verbal and nonverbal conduct.

Modern cases, decided under hearsay rules identical to our own, routinely admit evidence of incoming calls ordering drugs or placing bets, taken by investigating officers during a search, offered to establish the clandestine nature of the enterprise going on at the receiving end. *United States v. Giraldo*, 822 F.2d 205, 212–13 (2nd Cir.), *cert. denied*, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987); *United States v. Southard*, 700 F.2d

1, 13 (1st Cir.), *cert. denied,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Exhibit #5 was not admitted to establish any transaction between Guerra and her daughter, nor was it admitted to prove the truth of any matter asserted therein. The rule of law is that such documents, when admitted as circumstantial evidence from which the trier of fact may permissibly infer that a defendant deals in controlled substances, do not constitute hearsay. *Saldana,* 846 P.2d at 618–19. Having failed to demonstrate plain error, Guerra must suffer the consequences of the district court's admission into evidence of Exhibit #5.

## VII. CONCLUSION

We hold that the search warrant relied upon in the prosecution of this case issued upon a constitutionally sufficient showing of probable cause. Were we to determine that such probable cause had not been shown, it would remain clear that the officers conducting the search of Guerra's residence were entitled to rely, in good faith, upon the magistrate's determination that probable cause had been shown. In either circumstance, the search and resultant seizures were reasonable under the Fourth Amendment to the United States Constitution. Finding no error in the district court's refusal to suppress the fruits of that search, and no abuse of discretion in the district court's admission of proffered evidence, we determine that the judgment of the district court should be and hereby is affirmed in all respects.

GOLDEN, Justice, concurring specially.

I concur in the affirmance of the defendant's conviction on two counts of delivery of a controlled substance, although I disagree with much of the majority's treatment of the several issues raised, particularly the validity of the search warrant and the admissibility of the letter from defendant's daughter. In my view, the assigned errors are harmless in the face of the eyewitness testimony from Karol Potter that the defendant sold her two ounces of marijuana on November 11, 1992, and a quarter pound of marijuana on December 17, 1992.

I also agree with that said by Justice Lehman in his dissenting opinion when he makes the important point that Wyoming case law must be the foundation of this Court's treatment of the issues. In this case, however, I do not find it necessary to treat all the many issues raised here.

LEHMAN, Justice, dissenting.

The focus of my dissent is how the majority applied the law to the facts of this case. Wyoming has well-settled law regarding the test of whether an affidavit in support of a search warrant contains sufficient information for the issuing judge to make an independent judgment that probable cause exists for the issuance of a search warrant. *See Davis v. State,* 859 P.2d 89 (Wyo.1993); *Bland v. State,* 803 P.2d 856 (Wyo.1990); *Bonsness v. State,* 672 P.2d 1291 (Wyo.1983); *Ostrowski v. State,* 665 P.2d 471 (Wyo.1983); *Hyde v. State,* 769 P.2d 376 (Wyo.1989); *Smith v. State,* 557 P.2d 130 (Wyo.1976).

Wyoming precedent should be the foundation of our discussions, after which we may be guided by other courts in the orderly development of the law in Wyoming. The logic contained in the majority opinion does not adhere to that principle; therefore, I respectfully dissent.

The brute fact is that not all precedent represents currency of equal value. An authoritative gradation of legal precepts does exist. Some precedents are much more important than others. Recognition that a hierarchy of value exists is essential if judges are to find the proper grounds of decision; if lawyers are to find the basis for prediction as to the course of decision; and if members of society are to find reasonable guidance toward conducting themselves in accordance with the demands of legal order. Even more important—*much more important*—is the necessity to bring greater order to the design of law by identifying clearly, and at the earliest opportunity, the fundamental family of law implicated in the case.

\*    \*    \*    \*    \*    \*

The time has come for judges to simplify, rather than complicate, current legal issues. The time has come to identify

clearly the controversy in each case, and to isolate the branch of the law governing that controversy. The first step must be to concentrate on the tree's trunk and its main branches, rather than to fuss over the buds and blossoms which continually sprout and grow, but with the fall will be gone.

\* \* \* \* \* \*

\* \* \* The call for more simplicity and more order in briefs and opinions will cause us not to regress, but to progress. \* \* \* It will seek to remove from judicial decisions everything that is idiosyncratic, and in its place will attempt to establish predictability and reckonability.

Aldisert, Ruggero J., *Opinion Writing*, § 9.1 at 112–13 (1990).