## 70383. WHITTEN v. THE STATE.
### (331 SE2d 912)

BIRDSONG, Presiding Judge.

The defendant, Margaret Whitten, appeals her conviction of possession of cocaine. *Held*:

1. Error is alleged in the refusal of the trial court to grant defendant's motion to suppress. Deputy Sheriff Terry Cooper of Jackson County received information from a "concerned citizen" who had seen cocaine and some pills (demerol) in a mobile home, white with blue trim, on Little Street, next to Dr. Vickery's parking lot, in Commerce, Georgia, which was occupied by Bobby Massey. Cooper had received information earlier from the Chief of Police of Commerce of neighbors complaining of "late night traffic" at this mobile home. Also, the Chief of Police of Cornelia had advised his office that Bobby Massey was dealing in drugs in his mobile home. Cooper placed the mobile home under observation for a few days and recorded the names and tag numbers of people visiting the Massey residence. There were several visitors that the officers knew to be involved in drugs. A search warrant was obtained and on execution of the warrant, cocaine was seized. Defendant's enumeration is too general for this court to ascertain what specific objection is intended to be made. See *MacDonald v. MacDonald*, 156 Ga. App. 565 (1) (275 SE2d 142).

Argued in the brief are questions of reliability of the informant and whether such information was stale. The informant was identified as a "concerned citizen," known to the officer for over three years as a mature person, regularly employed, married, has children, and has no known criminal record. The "concerned citizen" had been present in the mobile home "within the last seven days" and had seen a quantity of white powdery substance, said to be "coke," and pills identified as "demoral" (sic: demerol).

The U. S. Supreme Court, in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527), had a similar issue involving an anonymous letter to the police which alleged that Lance and Susan Gates were selling drugs. The informant said that Susan drove their car to Florida and purchased the drugs, and Lance flew down and drove the car back. A police officer checked and found that Lance Gates had just purchased a ticket to West Palm Beach, Florida, and a DEA agent had seen him board the plane. A federal agent observed Gates

deplane in Florida and go to a room in a motel registered to his wife. The following day, the Gateses were seen to depart and head north. Based on this information a magistrate issued a search warrant for the Gateses' auto and home. The trial and appellate courts in Illinois suppressed the evidence. The U. S. Supreme Court reversed. They discarded the long-standing "two-pronged" test of *Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) and *Spinelli v. United States*, 393 U. S. 410 (89 SC 584, 21 LE2d 637), in favor of a "totality-of-the-circumstances" test. Id. p. 238. The Supreme Court agreed "that, standing alone, the anonymous letter . . . would not provide the basis for a magistrate's determination that there was probable cause to believe contraband would be found in the Gateses' car and home." Id. p. 227. Something more was required. It held that the affiant's affidavit, setting forth the investigation and observations of the officers, corroborating the informant's information was sufficient to permit a determination of probable cause. The court cautioned that the duty of an appellate court "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. p. 238. Reviewing courts were advised that "[a] magistrate's 'determination of probable cause should be paid great deference. . . .'" Id. p. 236.

The following year, in *Massachusetts v. Upton*, ___ U. S. ___ (104 SC 2085, 80 LE2d 721), the U. S. Supreme Court reversed the Massachusetts Supreme Court on the ground that instead of merely deciding whether the evidence as a whole provided a substantial basis for the magistrate's finding of probable cause, they wrongfully conducted a de novo probable cause determination. They emphasized that no single piece of evidence is conclusive, but the pieces should fit neatly together, and when viewed in its entirety, would support the magistrate's determination that there was "a fair probability that contraband would be found in [the suspect's] motor home." Id.

This court has always given the concerned citizen informer a preferred status insofar as testing the credibility of his information. *Miller v. State*, 155 Ga. App. 399-400 (270 SE2d 822); *Tuzman v. State*, 145 Ga. App. 761, 766 (244 SE2d 882). Furthermore, where, as here, other investigation supports the information of the informant, this can be considered as a part of the reliable basis for the finding of probable cause. *Mitchell v. State*, 239 Ga. 456, 458 (238 SE2d 100); *Davis v. State*, 129 Ga. App. 158, 159 (198 SE2d 913). Under the "totality-of-the-circumstances test," we find that the evidence supplied by the citizen informant, corroborated by observation of the police, and information from another police officer, plus complaints of other citizens to the police of the late-night traffic at this location, provided a substantial basis for the magistrate concluding that probable cause existed for the search. *Illinois v. Gates*, supra.

Counsel also contends that the evidence supplied the magistrate was "stale." This court has stated that where the sufficiency of the affidavit to show probable cause is based upon an informant, the time period must be affirmatively stated within the affidavit to show that the information is not stale. *Bell v. State*, 128 Ga. App. 426, 427 (196 SE2d 894). However, in the instant case, it should be observed that the issue of probable cause by the magistrate was not determined solely on the informant's observations but by evidence from the police in Commerce, the police in Cornelia, and the observations of the affiant up to the date of the execution of the warrant. The officer saw a known drug dealer and several other people he knew were involved in drugs go into the mobile home. Thus, the information before the magistrate concerned evidence up to the date of the issuance of the warrant. Further, this court has found that the use of the term that the informant has "within the past seven days" observed contraband within the suspect's premises not to indicate that the evidence was stale. *Kouder v. State*, 154 Ga. App. 597, 599 (269 SE2d 92).

It is clear from the transcript that this enumeration arose out of the attempts of the police to conceal the identity of the informant by giving a lengthy period of time during which the informant might have visited within the suspect's residence. The informant could have been within the suspect's residence on the last day of the period as well as any other day included therein. This generalization may be a necessary concomitant if law enforcement officials are to protect the identity of informants. Trial courts should be alert to the problem posed by this issue, i.e., staleness versus narrowing of the time period to pinpoint identity of the informant. Our Supreme Court has applied the rule of "totality-of-the-circumstances" analysis of *Illinois v. Gates*, supra, to this problem. *State v. Luck*, 252 Ga. 347 (312 SE2d 791). Time and staleness assuredly are elements of probable cause. Id. However, when an affidavit indicates the existence of an ongoing scheme to sell drugs, the passage of time becomes less significant than is the case of a single, isolated transaction. Id.; accord *Tabb v. State*, 250 Ga. 317, 323 (297 SE2d 227). These enumerated errors are without merit.

2. Counsel for defendant complains of the testimony of the sheriff that the defendant identified as hers the woman's purse containing cocaine. When the officer executed the search warrant, he announced that he was from the sheriff's office and had a warrant. The commode inside the mobile home was heard flushing. The officer rushed inside the mobile home and headed for the noise made by the commode. Defendant was seen standing over the commode, flushing it, with her right hand and arm wet. The officer reached down in the commode and withdrew a large plastic bag, containing five small plastic bags which contained a white powder, later found to be cocaine. The de-

fendant was placed under arrest and taken to the living room area. An Air Force jacket, with the name Whitten on the front, was found in the living room. One small plastic bag of cocaine was found in the pocket. A woman's purse was on the kitchen table. It contained the defendant's driver's license and social security card. The eyeglass case therein contained a large bag of white powder, which was determined to be "tetracaine." Tetracaine is a local anesthetic and is sometimes used as a cutting, or diluting, agent for cocaine because it has a numbing effect like cocaine. Another plastic bag containing cocaine was found inside a billfold in the woman's purse.

Counsel for the defendant examined the sheriff regarding his testimony on what he found in the woman's purse. The sheriff stated: "it was her billfold, her pocketbook, and she was sitting there at the table as we took each piece out." The cross-examination on this point covers several pages in the transcript. Finally, counsel stated: "Okay. Your testimony is that *the only thing in that purse* that directly related it to Margaret Whitten was a driver's license and possibly a Social Security card? A. She admitted it." (Emphasis supplied.) Defendant moved for a mistrial. It was denied. The witness was admonished and the jury instructed to disregard.

Earlier, defense counsel was cross-examining this witness on the same subject. The sheriff testified: "I made sure it was her pocketbook, and I asked her to come over there and sit down at the table. She was sitting over at the couch . . . and she made the statement it was her pocketbook." Counsel objected to anything the witness said about what the defendant said. The court ruled: "Well, I don't believe he testified to anything. He may have been going to, but I stopped it." No further objection was made, no motion for mistrial was made, and the testimony remains in the record.

Counsel for defendant had requested, under OCGA § 17-7-210, for copies of any statement given by the defendant while in police custody. No copy of a statement was served upon the accused. This was an oral statement made by the defendant while in custody, as the police had arrested her when they removed the cocaine from the commode.

There are several reasons why we find no reversible error. First, this information was elicited by the defense counsel, not by the state. See *Hilburn v. State*, 166 Ga. App. 357 (3) (304 SE2d 480). It is arguable that the answer was not responsive, but the answer did relate to the issue being discussed. Secondly, the same information had been elicited earlier by the defense and remains in the record. *Payne v. State*, 152 Ga. App. 471, 473 (263 SE2d 251); *Tuggle v. State*, 149 Ga. App. 844 (5) (256 SE2d 104). Further, the evidence of guilt was overwhelming and any possible error in its admission is harmless beyond reasonable doubt. *Hamilton v. State*, 239 Ga. 72, 76 (235 SE2d 515);

*Shepherd v. State*, 239 Ga. 28, 29 (235 SE2d 533). Moreover, the prosecutor stated in his place that the information was newly discovered and that neither the sheriff nor the investigator had informed him about the statement: "I had no knowledge of it." Newly discovered evidence does not come under OCGA § 17-7-210 (e). Finally, under the circumstances of this case, where the same evidence is in the record, the defense counsel elicited the answer, evidence of guilt is overwhelming, the evidence is ruled out, and the jury instructed to disregard it, we find it highly probable such testimony did not contribute to the verdict. *Owens v. State*, 248 Ga. 629, 631 (284 SE2d 408).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED MAY 28, 1985.

*Ronald M. Adams*, for appellant.

*Timothy G. Madison, District Attorney, T. David Motts, Assistant District Attorney*, for appellee.