2001 WY 96

**Richard D. CORDOVA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–43.

Supreme Court of Wyoming.

Oct. 16, 2001.

Rehearing Denied Nov. 20, 2001.

**145**

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; and Ken DeCock, Student Intern for the Prosecution Assistance Program. Argument by Mr. DeCock.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

1. Section 35–7–1031(a)(ii) and (c)(ii) provides:

**35–7–1031. Unlawful manufacture or delivery; counterfeit substance; unlawful possession.**
(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
. . .
(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000), or both;
. . .

LEHMAN, Chief Justice.

[¶ 1] Appellant Richard D. Cordova entered two *nolo contendere* pleas to charges of delivery of marijuana in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2001) and possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 2001).[1] Under W.R.Cr.P. 11, Mr. Cordova reserved his right to appeal the district court's denial of his motion to suppress evidence seized pursuant to a search warrant. On appeal, Mr. Cordova contends that the affidavit supporting the issuance of the search warrant was not adequate to establish probable cause and thus violated his constitutional rights as guaranteed by the United States and Wyoming Constitutions. Giving deference to the judicial issuing officer and concluding that the district court did not err in denying Mr. Cordova's motion to suppress, we affirm.

**ISSUES**

[¶ 2] Mr. Cordova presents this statement of the issues:

ISSUE I

Was the affidavit executed in support of the search warrant adequate to establish probable cause?

ISSUE II

Has the Wyoming Supreme Court elected to adopt a "good faith" exception to the exclusionary rule and, if so, does that exception conflict with Article 1, § 4 of the Wyoming Constitution?

Appellee State of Wyoming restates the issue:

(c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:
. . .
(ii) And has in his possession methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug in an amount greater than those set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than seven (7) years, a fine of not more than fifteen thousand dollars ($15,000.00), or both[.]

Did the district court err in concluding that probable cause existed to support the issuance of the warrant to search Appellant's residence and refusing to suppress the evidence seized by law enforcement during the execution of that warrant?

## FACTS[2]

[¶ 3] On May 6, 1999, Mr. Cordova sold for $160 approximately one and one-half ounces of marijuana to a confidential informant working with the Southwest Wyoming Drug Enforcement Team. This controlled buy took place at Mr. Cordova's residence in Rock Springs under the direction of Officer Russell Schmitt of the Green River Police Department. On July 20, 1999, Mr. Cordova was charged for this act with delivery of marijuana in violation of § 35-7-1031(a)(ii). On that same date, a warrant was issued for his arrest. On July 21, 1999, based on his own affidavit, Officer Schmitt sought and obtained a search warrant for Mr. Cordova's residence from the Sweetwater County Court Commissioner. The warrant was executed the same day. In the course of the search, officers discovered two plastic bags filled with a white powdery substance weighing in excess of three grams. The powder later tested as methamphetamine. On July 27, 1999, Mr. Cordova was charged with felony possession of methamphetamine in violation of § 35-7-1031(c)(i) and (c)(ii).

[¶ 4] Mr. Cordova entered a plea of not guilty to both charges on August 11, 1999. On September 10, 1999, he filed a motion to suppress the evidence obtained during the search of his residence, citing a lack of probable cause for the issuance of the warrant as a violation of his constitutional rights under the United States and Wyoming Constitutions. The suppression motion was heard on October 20, 1999. After testimony from Officer Schmitt and arguments of counsel, the district court denied Mr. Cordova's motion to exclude the search evidence. Subsequently, Mr. Cordova, pursuant to a plea agreement with the State, entered a conditional plea of *nolo contendere* to both charges properly

reserving his right to appeal the district court's denial of his motion to suppress under W.R.Cr.P. 11(a)(2). On December 7, 1999, Judgment and Sentence was entered against Mr. Cordova sentencing him to serve two concurrent terms of two to four years in the Wyoming State Penitentiary. This timely appeal followed.

## DISCUSSION

[¶ 5] Mr. Cordova contends that the affidavit executed by Officer Schmitt in support of the issuance of the search warrant for his residence was inadequate to establish probable cause as required by Article 1, Section 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution. Analyzing this issue under the Wyoming Constitution, we agree that the affidavit in question comes uncomfortably close to violating the protections guaranteed Wyoming citizens by art. 1, § 4. However, viewing the document in its totality and giving deference to the judicial issuing officer, we conclude that the affidavit was adequate to support a finding of probable cause sufficient for the issuance of the warrant.

[¶ 6] This court in *Vasquez v. State,* 990 P.2d 476 (Wyo.1999), recently articulated our position on the subject of independent state constitutional analysis, vis-à-vis art. 1, § 4 of the Wyoming Constitution. We explained:

[J]ust as we have done with other state constitutional provisions which have no federal counterpart, we think that Article 1, § 4 deserves and requires the development of sound principles upon which to decide the search and seizure issues arising from state law enforcement action despite its federal counterpart and the activity it generates for the United States Supreme Court. Development of sound constitutional principles on which to decide these issues may lead to decisions which parallel the United States Supreme Court; may provide greater protection than that Court; or may provide less, in which case the federal law would prevail; but whatever the result, a state constitu-

---

2. Because Cordova entered a conditional guilty plea, there was no jury trial. The facts presented were found in charging documents, motions, the arraignment, change of plea hearing, sentencing hearing, and court orders. Generally, the facts are not in dispute.

tional analysis is required unless a party desires to have an issue decided solely under the Federal Constitution.

990 P.2d at 485. *Vasquez* further established that, in order to best "develop our own constitutional principles under the state provision by consideration of constitutional theory appropriate to this state," our art. 1, § 4 analysis must take place prior to any federal constitutional analysis. *Id.* at 486.[3]

[¶ 7] Article 1, § 4 of the Wyoming Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

Over eighty years ago, this court addressed the section's purpose:

This provision against unreasonable search and seizure has been considered one of the fundamental props of English and American liberty of the individual citizen and to be most sacredly observed, giving rise to the expression that a "man's house is his castle," designed to prevent violation of his private security in property, or the unlawful invasion of the home of the citizen by the officers of the law acting under legislative or judicial sanction, and to give remedy against such usurpations.

*State v. Peterson,* 27 Wyo. 185, 194 P. 342, 345 (1920).

[¶ 8] It has been long settled that our state constitution's requirement that probable cause be supported by affidavit rather than the more general "oath or affirmation" of the Fourth Amendment to the United States Constitution somewhat strengthened the state provision because it creates a permanent written record. *Vasquez,* 990 P.2d at 483 (citing *Peterson,* 194 P. at 346); *see also Davis v. State,* 859 P.2d 89, 93 (Wyo.1993); *Smith v. State,* 557 P.2d 130, 132 (Wyo.1976). It is important to note that W.R.Cr.P. 41(c) allows judicial issuing officers to consider additional sworn testimony in making their determination of probable cause *provided* that the testimony is recorded and becomes part of the written affidavit. This prerequisite saves the rule from impermissibly conflicting with the affidavit requirement of art. 1, § 4 of the Wyoming Constitution.

[¶ 9] In deciding the case before us, we will first examine the standards by which we review a judicial issuing officer's determination of probable cause and issuance of a search warrant under the Wyoming Constitution. It is established law that Wyoming's affidavit requirement limits our review in that we are confined to and can only consider what the record reflects was before the issuing magistrate at the time of the issuance of the warrant. Supplemental testimony taken at a hearing on a motion to suppress cannot be considered in determining whether adequate probable cause existed at the time the warrant was issued. *Guerra v. State,* 897 P.2d 447, 453 (Wyo.1995); *Ostrowski v. State,* 665 P.2d 471, 478 (Wyo. 1983); *Smith,* 557 P.2d at 132.[4]

[¶ 10] Traditionally, this court has applied a *de novo* review when reviewing the sufficiency of an affidavit to support the issuance of a search warrant under art. 1, § 4. Indeed, *de novo* review is particularly appropriate under these circumstances. The reasons which normally underlie deferring to the district court's denial of a motion to suppress—

---

3. Our analysis herein attempts to include only those Wyoming cases in which it is clear that an independent analysis of the Wyoming Constitution has taken place. We are purposely excluding those cases in which the primary analysis falls under the federal constitution with the Wyoming Constitution cited secondarily as mere additional authority for a given proposition.

4. The exception to this rule applies when defendants meet their burden of establishing by a preponderance of the evidence that the affiant gave deliberately false statements or recklessly disregarded the truth in creating the affidavit. Then the affiant's false material is set to one side. If the remaining content is still sufficient to establish probable cause for the issuance of the search warrant, it is proper to deny the defendant's motion to suppress; but, if the remaining content is insufficient, the warrant is invalid, and the exclusionary rule prohibits admission of the evidence just as if probable cause was lacking on the face of the affidavit. *Davis,* 859 P.2d 89, 93 (Wyo.1993).

its ability to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions at the hearing on the motion—are absent when reviewing the sufficiency of an affidavit to support a determination of probable cause. Because art. 1, § 4 requires that all information the issuing officer relied upon to make the determination be included within the affidavit, this court is in essentially the same position as the issuing magistrate. Further, we have always held that ultimately whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo*. *Bailey v. State*, 12 P.3d 173, 176 (Wyo.2000); *Vasquez*, 990 P.2d at 480; *Gronski v. State*, 910 P.2d 561, 563 (Wyo.1996).

[¶ 11] Despite our long-standing *de novo* review standard, we also have cited federal authority stating that the issuing magistrate's determination of probable cause should be paid great deference. *Bonsness v. State*, 672 P.2d 1291, 1292 (Wyo.1983). The rationale for giving deference to the magistrate's determination is consistent with the strong preference in art. 1, § 4 for searches conducted pursuant to a warrant. "This reflects both a desire to encourage the use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected . . . is less severe than otherwise may be the case." *Illinois v. Gates*, 462 U.S. 213, 237 n. 10, 103 S.Ct. 2317, 2331 n. 10, 76 L.Ed.2d 527 (1983). Accordingly, a reviewing court, in order to effectuate our state constitution's strong preference for the issuance of a warrant, should give deference to the judicial issuing officer's determination of probable cause. This deference places the burden of establishing a constitutional violation by a preponderance of the evidence on parties claiming that their rights were violated. However, it is

> not to be employed to blindly sustain the actions of the magistrate or to place any reviewing court in a position that it may refuse to examine the factual basis for such issuance. To refuse or to fail to do so could result in serious erosion of one of our most valuable constitutional rights, and un-

less there is factual basis for determination of probable cause this court would be evading its responsibility by failing to declare this to be the case.

*Smith*, 557 P.2d at 133.

[¶ 12] We now turn to the substantive law governing the case before us. In *Smith*, this court addressed the test for probable cause necessary to support the issuance of a search warrant under the Wyoming Constitution. We held that judicial issuing officers must have a substantial basis for concluding that probable cause exists. In essence, they must make a two-fold finding to justify the issuance of a search warrant. First, the factual situation must be sufficient to warrant a reasonably cautious or prudent man to believe that a crime was being committed or that one had been committed. Second, there must be a showing that the fruits of the crime or the evidence thereof are in the area or structure sought to be searched. *Smith*, 557 P.2d at 132–33. This test requires that the issuing officer weigh and consider all of the circumstances surrounding the issuance of the warrant. *Bonsness*, 672 P.2d at 1293.

[¶ 13] Support for the judicial officer's factual finding of probable cause for the issuance of the warrant must be found in the affidavit. *Ostrowski*, 665 P.2d at 478. This document must supply the issuing officer with sufficient information to make an *independent* judgment that probable cause exists for the warrant. To that end, the affidavit must include more than bare conclusions of the affiant. *Id.*

[¶ 14] The necessity that affiants adequately articulate the factual basis for their request for a warrant is absolute and long established in this court's jurisprudence interpreting art. 1, § 4 of the Wyoming Constitution. The requirement arises as a consequence of our constitutional framework because

> [i]t is the judge or magistrate before whom the complaint is filed who determines the question of existence of "probable cause" for the issuance of a search warrant, and not the person who files and verifies the complaint and asks for the warrant.

*Peterson,* 194 P. at 348 (quoting 24 R.C.L. 707). *Peterson,* in addition to holding individual warrants unconstitutional as lacking probable cause, struck down legislation that allowed warrants to be issued based on the affiant's mere "information and belief." The court articulated its rationale for doing so:

> This necessarily makes the issuance of a warrant ... a judicial act, to be exercised by the officer who is clothed by law with the power and authority to determine as to whether or not the warrant should be issued, and this discretion must rest upon facts verified by oath or affirmation. The questions of probable cause and of reasonable ground to believe that an offense has been committed are addressed alone to the judgment of such officer, and their determination cannot, by statute, be vested in the person who verifies the facts from which these opinions, conclusions, or deductions are drawn. Any other construction would reduce this constitutional guaranty to an absurdity, and would violate its letter and spirit and defeat its purpose.

194 P. at 348–49 (quoting *De Graff v. State,* 2 Okla.Crim. 519, 103 P. 538, 541 (1909)).

[¶ 15] In the context of an affidavit containing hearsay from "informants," sufficient facts must be presented such that the judicial issuing officer or magistrate can make an independent judgment as to the third party's credibility, veracity, reliability, and basis of knowledge in reaching the ultimate determination of the existence of probable cause. We do not herein adopt a rigid test for the level of factual support or corroboration necessary to make a determination of adequate probable cause but simply remind all judges, judicial officers, and magistrates that art. 1, § 4 does not allow the issuance of search warrants for the homes of Wyoming citizens on the basis of mere "information and belief" whether it be held by law enforcement officers or their informants. *Wiggin v. State,* 28 Wyo. 480, 206 P. 373, 376 (1922); *State v. Boulter,* 5 Wyo. 236, 39 P. 883, 884 (1895).

[¶ 16] Turning now to the affidavit before us, we find that it is composed of nineteen paragraphs. Paragraphs one through five list Officer Schmitt's years of experience, specialized training, and expertise in drug enforcement activities. Although, this court has said that a law enforcement officer's experience and expertise are factors that can be considered in the context of a warrantless arrest or a warrantless search, *Jandro v. State,* 781 P.2d 512, 518 (Wyo.1989); *Lee v. State,* 2 P.3d 517, 522 (Wyo.2000), these factors have less validity in determining the existence of probable cause for the issuance of a search warrant. Again, under art. 1, § 4 it is the judicial officer who is charged with making the ultimate determination of probable cause. He cannot rely simply on the extensive expertise of a trained narcotics officer as a substitute for the requirement of a sufficient factual basis with which to form his own objectively reasonable determination for the issuance of a search warrant. Nor can we in reviewing his determination.

[¶ 17] Paragraphs six through eleven detail the controlled buy of marijuana between the confidential informant and Mr. Cordova that took place on May 6, 1999. The search warrant was not sought until July 21, 1999, a span of over two and one-half months. Mr. Cordova argues that, because a finding of probable cause requires a determination that certain objects can *currently* be found at a particular place, the controlled buy was too remote in time to the request for the search warrant. Consequently, he contends, any information it may have provided was "stale" and cannot provide the basis for a determination of probable cause. The State does not directly address this temporal point, arguing simply that the affidavit taken as a whole indicated that Mr. Cordova's drug dealings were continuous in nature.

[¶ 18] This court has never addressed exactly this issue on the basis of art. 1, § 4 of the Wyoming Constitution. In *State v. Scott,* 41 Wyo. 438, 286 P. 390 (1930), a case applying the state constitution, the court reversed the denial of the defendant's motion to suppress search evidence of an illegal moonshine operation. It stated in dicta:

> The affidavit was sworn to and filed with the justice of the peace, and the search warrant issued, on January 31, 1929. It will be noticed that the affidavit seems to

allege knowledge of a state of affairs on December 31, 1928. While the defendant makes no mention of this point, we may say in passing that a search warrant is issued to seize a thing alleged to be at that time in the place to be searched, and it would be at least doubtful whether an affidavit of conditions one month before would be a sufficient showing of probable cause. 286 P. at 392 (citation omitted) (citing *State v. Gardner*, 74 Mont. 377, 240 P. 984 (1925); *Dandrea v. United States*, 7 F.2d 861 (C.C.A.8 1925)).

[¶ 19] The court next addressed temporal proximity as a factor supporting a probable cause determination, apparently on the basis of the Fourth Amendment to the United States Constitution, in *Guerra*, 897 P.2d 447 (Golden, J., specially concurring; Lehman, J., dissenting). We rejected a bright-line test, holding that, rather than being determined by the days or months between the facts relied upon and the issuance of the warrant, timeliness depends on the "nature of the criminal activity, the length of the activity, and the nature of the property to be seized." 897 P.2d at 454 (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir.1990)).

[¶ 20] In the case before us, the nature of the criminal activity is the illegal possession and sale of marijuana. Mr. Cordova cites to cases in which courts have held that, precisely because of its illegality, a drug trafficking scheme has an attenuated existence. "To point out the obvious, the goal of selling drugs is to dispose of them." *United States v. Huggins*, 733 F.Supp. 445, 449 (D.D.C. 1990). Our research indicates that this view of the nature of this particular criminal activity comprises the greater weight of authority, and we find its reasoning persuasive. *See generally* Annotation, *Search Warrant: sufficiency of showing as to time of occurrence of facts relied on*, 100 A.L.R.2d 525 Later Case Service, § 7. As a general conclusion, because of its distinctive nature, the illegal sale of controlled substances cannot be com-

pared facilely to a white-collar criminal scheme or a legitimate business for purposes of concluding whether factual information contained within an affidavit is "stale" and thus inadequate to support a probable cause determination under art. 1, § 4.[5]

[¶ 21] The second factor that a court may consider in determining timeliness is "the length of the activity." We stated in *Guerra* that, "when the activity is of a protracted and continuous nature, the passage of time diminishes in significance." 897 P.2d at 455 (quoting *United States v. Sherman*, 576 F.2d 292, 296 (10th Cir.1978)). The district court, in denying Cordova's motion to suppress, held that the drug sales in question were a continuing activity. The general rule is that the facts and circumstances set forth in an affidavit submitted in support of the issuance of a search warrant should be current and timely so as to indicate that the premises, person, place, or thing to be searched presently contains the fruits or evidence of the crime. *United States v. Johnson*, 461 F.2d 285, 286 (10th Cir.1972). An exception to this rule is where the court finds facts indicating the likelihood that there is a continuing criminal activity. *Id.* "Time and staleness assuredly are elements of probable cause. However, when an affidavit indicates the existence of an ongoing scheme to sell drugs, the passage of time becomes less significant than is the case of a single, isolated transaction." *Whitten v. State*, 174 Ga.App. 867, 331 S.E.2d 912, 914 (1985) (citation omitted).

[¶ 22] The affidavit avers in paragraphs twelve through fifteen:

12. That the Confidential Informant stated that he has bought marijuana from Cordova on at least 30 separate occasions within the last 12 months. He has stated on one of those occasions he has observed as much as 10 pounds of marijuana in Cordova's residence at one time.

13. That the Confidential Informant stated that he believes Cordova buys most of his marijuana from an unknown source in

---

5. Our finding is limited to the illegal sale of controlled substances. Cultivation of illegal crops or the creation of clandestine drug labs, because of the differing nature of the criminal activities involved, may warrant a different finding as to how quickly given information may become "stale" for purposes of an art. 1, § 4 analysis.

Ft. Collins, Colorado. Your affiant has checked Cordova's drug history and has found that he has prior drug activity in the state of Colorado.

14. That the Confidential Informant has provided information in the past on more than five occasions and that information provided regarding Cordova has been reliable and is found to be truthful during the agents [sic] follow up investigations.

15. Your affiant has confirmed that Cordova is still living in the above described resident [sic]. Your affiant has received information from the Confidential Informant that Cordova is still involved in trafficking of marijuana. Your affiant believes because of the Confidential Informants' statements Cordova is still involved in marijuana trafficking.

 [¶ 23] In paragraph twelve, the affidavit avers that "the Confidential Informant [has] stated that he has bought marijuana from Cordova on at least 30 separate occasions within the last 12 months." Generally when an affidavit states that "within some given time period" an event has occurred, without giving specific dates, the reviewing court must assume that the events occurred during the earliest time averred for purposes of a timeliness analysis. *See, e.g., Commonwealth v. Novak,* 233 Pa.Super. 236, 335 A.2d 773, 774 (1975); *State v. Birkestrand,* 239 N.W.2d 353, 358 (Iowa 1976).

> The reason for this policy is obvious. If this were not the construction given to this phrase, stale information could be made to appear current by the mere use of "within" language. For example, if a dozen drug purchases were made in the first week of January and one wished to obtain a search warrant in the first week of March based solely on this information he would need only say that 'within the last two months a dozen purchases were made,' rather than "a dozen purchases were made in the first week of January."

*Novak,* 335 A.2d at 774. Wyoming law enforcement officers can easily avoid this judicial construction by simply including dates of transactions within their affidavits.

 [¶ 24] Notwithstanding our construction as to *when* the transactions averred to within paragraph twelve took place, the informant describes firsthand observations of large quantities of marijuana in Mr. Cordova's home. An informant's description of criminal activity along with firsthand knowledge of the events entitles his information to carry greater weight than it might otherwise. *Lee,* 2 P.3d at 523 (citing *Bonsness,* 672 P.2d at 1293). The quantity of marijuana possessed by Mr. Cordova standing alone allows the inference that he possessed it with intent beyond that of personal consumption. In addition, the informant's statement that he had purchased marijuana from Mr. Cordova "on at least 30 separate occasions within the last 12 months" is "against his own penal interest." This court has held that an admission against penal interest carries its "own indicia of credibility." *Id.* Likewise, Officer Schmitt's corroboration of the confidential informant's statements regarding where Mr. Cordova gets his marijuana, the controlled buy that took place on the basis of the confidential informant's information, and Officer Schmitt's general statement that on five occasions, when he was "following up" the confidential informant's information, he found the confidential informant to be reliable and truthful (though vaguely conclusory) provide a basis for the judicial issuing officer to conclude that the confidential informant was a reliable and credible source of information as to Mr. Cordova's activities. We think that thirty separate transactions with the same confidential informant occurring over a period of time, a subsequent controlled buy on May 6, 1999, and averments by a credible and reliable source sufficiently establish that Mr. Cordova's trafficking activity was lengthy and continuous.

[¶ 25] The third factor that should be considered in determining whether the information contained within an affidavit is timely and thus sufficient to support the issuance of a search warrant is the "nature of the property to be seized." This was the deciding factor in *Guerra.* There the court said that, because the items to be seized were notations of fronted contraband, as business records of debts owed the record keeper, they were of "enduring utility" to the defendant and likely to remain intact until such time as the debts

were satisfied. The unpaid debts owed to the defendant also established evidence of the continuing nature of her crimes. In *Guerra*, the court stated that the two sales of marijuana over six months old may have been sufficiently remote in time as to render a warrant void, particularizing additional marijuana as the thing to be seized, but distinguished the case, again, because the objective of the search was "not additional product, but business records based upon prior transactions for which Guerra had yet to be paid." *Guerra*, 897 P.2d at 456.

[¶ 26] Paragraph sixteen of the affidavit in question avers in three parts:

> Your affiant has worked as an undercover officer and has developed contacts with narcotic users, narcotic sellers, narcotic informers and narcotic experts. Your affiant has been involved in discussions and in interviews with individuals who are involved in the aspects of sales, packaging, transferring and the use of narcotics to include methamphetamine. Your affiant is familiar with the manner and means in which methamphetamine is processed and packaged for sale.
>
> Example # 1. Based upon my experience, training and participation in other investigations I know that very often it is vital to analyze individuals' records in order to locate and identify a target's assets. Even though their assets may be in other persons' or entities' names, the individuals continue to maintain dominion and control over their assets and their assets or evidence of asset ownership are normally retained at a location under their control or ownership, such as their residence or their business location. In my experience, documents and paperwork evidencing their business and personal financial transactions are often maintained and preserved for periods of time well beyond the occurrence of actual financial transactions.
>
> Example # 2. Based on my experience, training and participation in other investigations, I know that individuals who attempt to hide assets very often place or attempt to place their assets in names other than their own to avoid detection. These individuals do this by giving cash to

"third party nominees" and have this third party purchase assets in their name. By doing this, they hope to lessen the likelihood that the third party's activities will be traced back to themselves. This serves to insulate the individuals engaged in the illegal activity from the purchase of the asset.

[¶ 27] The affidavit fails to indicate how these very general statements relate to Mr. Cordova. This court has decried the use of general statements such as these in an affidavit before:

> We need not attempt a grammatical analysis of the allegations of the affidavit. It was evidently intended to state a set of facts that would cause the issuance of a warrant in every case where it was desired to search for whisky or articles used in its manufacture. The use of such a form, without any effort to make it fit the particular case, shows an intention to treat too lightly the constitutional provisions designed to prevent unreasonable searches and seizures, and forbidding the issuance of a warrant except upon probable cause supported by affidavit particularly describing the place to be searched and the thing to be seized.

*Scott*, 41 Wyo. 438, 286 P. 390 at 392 (citing Wyo. Const. art. 1, § 4).

[¶ 28] The final three paragraphs of the affidavit state:

> 17. Based upon your affiant's training and experience, your affiant knows that persons involved in narcotic trafficking or the use of narcotics and dangerous drugs often maintain receipts, currency, notes, ledgers, address books, telephone numbers and computers with information regarding other persons who may be involved in narcotic trafficking.
>
> 18. Your affiant prays for authorization from this Court to serve this warrant at any time, day or night for fear that the evidence listed will be destroyed, altered, concealed, or otherwise disposed of.
>
> 19. As a result of the above information, the affiant has probable cause to believe that evidence of Richard Cordova [sic] drug distribution and use is being concealed at [the address of the residence].

Evidence including but not limited to usable amounts of controlled substances, monies, receipts, address books, scales, ledgers and use paraphernalia will exist in the areas to be searched. Your affiant prays that a warrant for search and seizure be issued as requested.

We find the facts before us distinguishable from those in *Guerra*. Unlike *Guerra*, there is no averment that Cordova "fronted" contraband or would have any reason to keep notations of unpaid debt. The factual information contained within an affidavit cannot be considered less "stale" for art. 1, § 4 purposes merely because the affidavit alleges that the warrant is sought to search for records, rather than drugs, without more than a bare allegation that "persons involved in narcotic trafficking or the use of narcotics and dangerous drugs" often maintain records. To allow this would render the third factor in a timeliness analysis meaningless because law enforcement officers could simply allege their search is one for records and thus automatically extend the shelf life of the facts supporting their request for the warrant. However, in this case, because we think the affidavit before us adequately establishes a continuing scheme of drug sales, it was sufficient to establish probable cause to support a search for and seizure of narcotics on the date the warrant was issued. Likewise, we find that the language within the affidavit referencing records, receipts, and ledgers, etc. is sufficient to justify a *seizure* of such items should they be found by law enforcement officers in the course of an otherwise lawful search.

[¶ 29] In conclusion, after weighing the factors that guide our timeliness analysis and interpreting the affidavit before us in its totality in a "commonsense and realistic fashion," [6] we find that it sufficiently established a continuous, lengthy, and ongoing scheme of drug trafficking by Mr. Cordova such as to allow a reasonably cautious and prudent judicial officer to issue a search warrant for Mr. Cordova's residence on July 21, 1999.[7] Having herein determined that that the affidavit requirement of art. 1, § 4 of the Wyoming Constitution "somewhat strengthened" our state provision, and after analyzing the issue on that basis, we conclude there is no need to analyze the warrant under the Fourth Amendment to the United States Constitution. In addition, because we have found adequate probable cause for the issuance of the search warrant in question, we need not address whether this court should recognize a "good faith" exception to art. 1, § 4 of the Wyoming Constitution. The district court's denial of Mr. Cordova's motion to suppress search evidence is affirmed.[8]

---

6. [A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
*United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

7. Examining the actual warrant before us, we take this opportunity to remind judges, issuing magistrates, judicial officers, and law enforcement personnel of the items that constitutionally can be seized under art. 1, § 4 of the Wyoming Constitution. An issued warrant can properly authorize a government officer to seize contraband, fruits of crimes, and evidence of crimes. W.R.Cr.P. 41(b). However, the warrant at issue authorizes seizure of "United States Currency, precious metals and jewelry which '*could be used to purchase controlled substances.*'" (Emphasis added.) Article 1, § 4 requires a showing that currency is the fruit of a crime or evidence of a crime before it may be constitutionally seized.

8. The district court's Judgment and Sentence entered on December 7, 1999, incorrectly lists the crime charged and pleaded as Wyo. Stat. Ann. § 35–7–1031(c)(i) (misdemeanor possession of a controlled substance) for which, unless a subsequent offense, the maximum sentence is twelve months. It is clear in the record that Mr. Cordova in fact pleaded *nolo contendere* to § 35–7–1031(c)(ii) (felony possession of methamphetamine). Mr. Cordova's brief does not mention this error. However, because the entered sentence exceeds the maximum allowable under