2007 WY 142

**David Larry ABEYTA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–123.**

Supreme Court of Wyoming.

Sept. 5, 2007.

**4**

Representing Appellant: D. Terry Rogers, Interim State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and David L. Delicath, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶1] The Appellant, David Larry Abeyta, was arrested and charged with three separate criminal drug charges after a search of his residence revealed drugs and drug paraphernalia. Abeyta filed a motion to suppress this evidence asserting that the affidavit submitted in support of the application for the search warrant failed to demonstrate probable cause. The motion to suppress was denied and Abeyta entered a conditional guilty plea pending the outcome of this appeal. We affirm.

## ISSUE

[¶2] The sole issue before this Court is whether the affidavit executed in support of the search warrant provided the warrant-issuing judicial officer with a substantial basis for concluding that probable cause existed to search Abeyta's residence.

## FACTS

[¶3] On May 4, 2005, Officer William Hill of the Rawlins Police Department requested a warrant to search Abeyta's home. The affidavit attached in support of the warrant application read, in its entirety, as follows:

### AFFIDAVIT

1. I, William Hill, of lawful age, being first duly sworn upon oath according to law, depose and say as follows:

2. On or about April 20, 2005, Rawlins Police Department received information that Larry Abeyta was selling methamphetamine from his house located at 517 McKinley St., which is situated within three hundred feet of Pershing Elementary School in Rawlins, Carbon County, Wyoming.

3. After receiving this information, the Rawlins Police Department began to watch the above-described house to determine whether drug activity was afoot.

4. Over the past two weeks, or so, I, together with other law enforcement officers in the area, have observed numerous known drug users and other individuals frequenting the house located at 517 McKinley Street. These individuals have been observed entering the house, remaining there for short visits of approximately 5–10 minutes and then leaving.

5. On a number of these occasions, officers have observed the above-described persons walking from the house to a shed situated in the back yard of the same property, turning on a light, spending a few minutes inside the shed, and then returning to the house for a few more minutes, and then leaving the premises.

6. On or about May 1, 2005, Rawlins Police Officer Hooper received information that Larry Abeyta had offered to provide a confidential informant with methamphetamine, and that Mr. Abeyta always carries in his waistband a silver, 9mm semi-automatic handgun. Mr. Abeyta told the confidential informant that he was aware the police department is watching him and his residence.

7. During the late evening hours of May 3, 2005, your Affiant was parked outside the house located at 517 McKinley. During this time, I noticed a dark-colored car which appeared to be a Ford, pull into a vacant lot situated to the West of the house. I watched as the vehicle lights were shut off, and approximately 20 seconds later, the person I believed to be the

driver of this vehicle entered the front door of 517 McKinley Street. Approximately 10 minutes later, I observed this same person leave the residence, and run from the front door toward the vacant lot where the dark-colored car had been parked. I then observed the dark-colored car start up and drive off, heading South on McKinley Street, then turning to travel East on Center Street. The vehicle then turned to travel North on Washington Street. At that point, I informed officers that the vehicle had left the area and described the vehicle. At this same time, the vehicle was turning in front of Rawlins Police Department Officer Reynolds, and was observed to be traveling 28 miles per hour in a fifteen mile per hour zone.

8. Officer Reynolds placed a stop on the vehicle for exceeding the posted speed limit. The driver told the officer his name was Charles Herbst with a date of birth of 9/20/58. Officer Reynolds was advised by dispatch that there was an active warrant for Charles Herbst.

9. Lieutenant Eric Ford of the Rawlins Police Department and Sheriff's Deputy Jeff Walton were assisting Officer Reynolds and knew from prior contact with the individual that his identity was not Charles Herbst, but was actually David M. Thomas. He was then arrested for interference with a police officer.

10. While inventorying the contents of Mr. Thomas's wallet, a white paper bindle containing what appeared to be a small amount of crystallized methamphetamine was found. The substance in the bindle was tested with a methamphetamine NIK test kit, showing a presumptive positive result for methamphetamine.

11. Mr. Thomas claimed that he had come from Stagecoach apartments, and that he found the bindle on the ground in his shop earlier in the day. It is known that Mr. Thomas has no shop, and in fact, received permission on Monday, May 2, 2005, from District Court Judge Wade Waldrip to move to Cheyenne, where he had obtained employment with Sky Harbor Air Service, being unemployed here in Rawlins. Additionally, your Affiant personally observed him to have come from 517 McKinley Street, and that he had not come from the Stagecoach Apartments.

12. Your Affiant is aware that David M. Thomas is presently out on bond for a felony charge of concealing or disposing of stolen property in Criminal Docket No. CR-2005-044, in the District Court for the Second Judicial District, State of Wyoming.

FURTHER YOUR AFFIANT SAITH NAUGHT.

Based on the above affidavit, a search warrant was issued on May 4, 2005, and executed that same day. Upon searching Abeyta's residence, officers discovered a measurable amount of crystal methamphetamine on a digital scale and a marijuana pipe with marijuana residue in it next to the bed where a five-year-old child was sleeping. Officers also discovered, among other items, additional drugs, scales and other drug paraphernalia, weapons—including a handgun and ammunition, large quantities of cash, a video surveillance system, and a police scanner.

[¶ 4] Abeyta was charged with possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (LexisNexis Supp.2004), possession of cocaine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii) (LexisNexis Supp.2004), and endangering a child with methamphetamine, in violation of Wyo. Stat. Ann. § 6-4-405(c) (LexisNexis Supp. 2004). On October 4, 2005, Abeyta filed a motion to suppress evidence wherein he asserted that the affidavit attached to the search warrant was not sufficient to establish probable cause. The matter was assigned to the circuit court judge for the limited purpose of deciding Abeyta's motion to suppress. A hearing was held on October 26, 2005, and an order denying Abeyta's motion to suppress was entered on November 14, 2005.

[¶ 5] On November 22, 2005, Abeyta changed his not-guilty plea to a conditional guilty plea. Abeyta was sentenced to three to seven years in prison for the possession of methamphetamine charge, three to five for the possession of cocaine charge, and three to five for the endangering a child with methamphetamine charge, with all periods of incarceration running concurrently.

[¶ 6] Abeyta timely appealed the judgment and sentence.

## STANDARD OF REVIEW

[¶ 7] When reviewing the adequacy of a probable cause affidavit, we have said that:

> The duty of reviewing courts is simply to ensure that the warrant-issuing judicial officer had a substantial basis for concluding that probable cause existed. As both our Court and the United States Supreme Court have recognized, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Rohda v. State,* 2006 WY 120, ¶ 4, 142 P.3d 1155, 1158 (Wyo.2006).

## DISCUSSION

[¶ 8] The legal standards applied when reviewing the sufficiency of a probable cause affidavit are well established. Both the Fourth Amendment to the United States Constitution and Wyoming Constitution Article 1, § 4, protect citizens against unreasonable searches and seizures. Our state provision, however, is stronger because it requires "the probable cause finding for issuance of a search warrant to be supported by affidavit." *Hixson v. State,* 2001 WY 99, ¶ 5, 33 P.3d 154, 156 (Wyo.2001) (footnote omitted).[1] We have held that the affidavit requirement strengthens the Wyoming citizen's rights by creating a permanent record. *Id.* Wyoming Constitution Article 1, § 4 provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

[¶ 9] When reviewing whether a particular affidavit provided probable cause for issuance of a search warrant, this Court begins with the presumption that an affidavit presented in support of a search warrant is valid. *Page v. State,* 2003 WY 23, ¶ 9, 63 P.3d 904, 909 (Wyo.2003). Search warrant affidavits are tested by much less vigorous standards than those governing the admissibility of evidence at trial, and because of the preference for warrants, and the desire to encourage law enforcement personnel to seek warrants, any doubt should be resolved by sustaining the search. *Davis v. State,* 859 P.2d 89, 94 (Wyo.1993).

[¶ 10] The warrant-issuing judicial officer must examine the affidavit to determine whether the factual statements contained therein provide probable cause to support the issuance of a search warrant.

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. Probable cause
>
> > is a "practical, nontechnical conception." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.,* at 175, 69 S.Ct. at 1310.
> >
> > * * * *
> >
> > [P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Schirber v. State,* 2006 WY 121, ¶ 6, 142 P.3d 1169, 1172–73 (Wyo.2006) (some citations omitted) (quoting *Illinois v. Gates,* 462 U.S. 213, 231–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983)). Ultimately the "test for determining the existence of probable cause is whether the factual situation described in the affidavit is sufficient to cause a reasonably cautious or prudent person to believe

---

1. The Fourth Amendment to the United States Constitution, which contains no affidavit requirement, reads as follows:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

that a crime was being committed or that one had been committed." *TJS v. State,* 2005 WY 68, ¶ 12, 113 P.3d 1054, 1057 (Wyo.2005).

[¶ 11] When presented with an application for a search warrant, the warrant-issuing judicial officer applies a "totality of circumstances" analysis in making an independent judgment whether probable cause exists to support the issuance of the warrant. *Crackenberger v. State,* 2006 WY 162, ¶ 7, 149 P.3d 465, 470 (Wyo.2006).

> In making that independent judgment, the judicial officer is limited to the four corners of the supporting affidavit. *Page* [*v. State* ], [2003 WY 23], ¶ 9, 63 P.3d [904,] 909 [ (Wyo.2003) ]. The "totality of circumstances" analysis requires the judicial officer simply "to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *see Bonsness* [*v. State* ], 672 P.2d [1291,] 1293 [ (Wyo.1983) ].

*Rohda,* ¶ 5, 142 P.3d at 1159.

[¶ 12] With those principles in mind, we turn to the specific issues presented in this appeal. Abeyta points to a number of isolated portions of the affidavit that he claims are defective and contends that as a result of these alleged deficiencies, the affidavit fails to support a finding of probable cause to search his home. Before examining Abeyta's individual arguments in detail, we note that Abeyta's paragraph-by-paragraph analysis is inconsistent with the "totality of the circumstances" approach requiring us to "consider all of the material evidence together, and not in piecemeal fashion." *Rhoda,* ¶ 11, 142 P.3d at 1164.

[¶ 13] Abeyta's first argument relates to the following statement in paragraph 2 of the affidavit: "[o]n or about April 20, 2005, Rawlins Police Department received information that Larry Abeyta was selling methamphetamine from his house located at 517 McKinley St." Abeyta contends that the source of the "information" regarding Abeyta selling methamphetamine is unverified and therefore the judicial officer had no means of assessing the veracity of this information. Abeyta points to *Hixson v. State,* 2001 WY 99, 33 P.3d 154 (Wyo.2001) in support of his contention. In *Hixson,* the affidavit mentioned an investigation but failed to state who conducted the investigation or attribute any details surrounding the investigation to any person. *Id.* at ¶ 8, at 157–58. We concluded that, because the affidavit did not identify the source of the information contained therein, it would have been impossible for the judicial officer to assess the reliability of those individuals. *Id.* at ¶ 11, at 158–59.

[¶ 14] The facts presented in the present affidavit are distinguishable from those in *Hixson.*[2] To begin, the factual information missing from the affidavit in *Hixson* was central to the probable cause determination—without knowing who conducted the investigation, it was impossible to determine whether the statements regarding the investigation were reliable. Here, however, the statement that the police department received information that Abeyta was selling drugs is not an important or even necessary element of the probable cause equation. That statement appears to have been included primarily to provide context for the officers' subsequent actions in observing Abeyta's property. Also, unlike the affidavit in *Hixson,* the affidavit here contains independent reliable and verifiable information supporting a finding of probable cause.

[¶ 15] In his next argument, Abeyta takes exception to the veracity and reliability of the statement in paragraph 4 that Officer Hill and other law enforcement officers observed "numerous known drug users" frequenting Abeyta's house. Abeyta insists this statement is a barebones conclusion that does not support a probable cause finding. We agree. We have often said that an affidavit "must include more than bare conclu-

2. "The determination of probable cause must rest upon the factual showing in each case. 'Decided cases are helpful only in declaring the general rule, and are persuasive only insofar as they present similar facts[.]' " *Smith v. State,* 557 P.2d 130, 133 (Wyo.1976) (quoting *Garhart v. United States,* 157 F.2d 777, 779 (10th Cir. 1946)).

sions of the affiant." *Bouch v. State,* 2006 WY 122, ¶ 13, 143 P.3d 643, 648 (Wyo.2006); *TJS,* ¶ 12, 113 P.3d at 1057; *Cordova v. State,* 2001 WY 96, ¶ 13, 33 P.3d 142, 148 (Wyo.2001).

[¶ 16]   We recognize the lack of corroboration supporting the "known drug users" statement.   The affidavit does not contain the names or other identifying characteristics of those individuals, nor does it state how the affiant was aware that these individuals were drug users.   If the warrant-issuing officer were relying upon this information alone, there would be no substantial basis for a probable cause finding.   However, the law does not require that an affidavit be absolutely devoid of conclusory statements; rather, the law requires that the affidavit "must include ***more than*** bare conclusions of the affiant." *Cordova,* ¶ 13, 33 P.3d at 148 (emphasis added).   Under the totality of the circumstances approach, we cannot evaluate the entire affidavit based on one isolated unverified statement.   Instead, we must examine the entire affidavit and determine whether, based on all the information contained therein, the warrant-issuing officer had a substantial basis for concluding that probable cause existed.   Therefore, while we agree that the "known drug users" statement lacked a proper factual foundation, we must examine the remaining portions of the affidavit to determine whether, without that statement, a substantial basis for the probable cause finding remains.

[¶ 17]   In Abeyta's next argument, he points to statements contained in paragraphs 4 and 5 of the affidavit.   Those paragraphs detail officers' observations of individuals entering the house or shed situated in back of Abeyta's house and remaining there for a short period of time (5–10 minutes) and then leaving.   Abeyta asserts that these observations do not support a probable cause finding as there is no description of the specific nature of the activity occurring during those visits.

[¶ 18]   These firsthand observations of Officer Hill are presumed reliable.   The affiant law enforcement officer may include in his affidavit the raw data of his own sense perception, that is, what he saw, heard, or smelled firsthand.   This first-

hand information constitutes the affiant's basis of knowledge—how he acquired his information.   From affiant's firsthand information, the judicial officer may draw conclusions about the existence or not of probable cause.   With respect to the affiant's veracity or reliability, the judicial officer relies on the affiant's oath, with its sanctions of perjury, which is an integral part of the affiant's affidavit.

*Rohda,* ¶ 7, 142 P.3d at 1159.   Likewise, when the affiant is reporting the firsthand observation of a fellow law enforcement officer, "courts hold that such an officer is presumed truthful or reliable and, therefore, no special showing of veracity or reliability is necessary."   Id. at ¶ 8, at 1159.

[¶ 19]   With regard to the nature of the activity observed, other courts have found that short-term visits by multiple individuals in a drug related investigation is a proper fact to be considered in evaluating the totality of the circumstances surrounding a probable cause determination.   *United States v. Leon,* 379 F.3d 1024, 1028 (8th Cir.2004); *United States v. Rankin,* 261 F.3d 735, 739 (8th Cir.2001); *People v. Hill,* 690 P.2d 856, 859 (Colo.1984).   As noted previously, reasonable conclusion may be drawn from the firsthand observations of law enforcement officers.   In drawing conclusions, the affidavit must be interpreted in a "commonsense and realistic fashion" resolving all doubts in favor of sustaining the search. *TJS,* ¶ 10, 113 P.3d at 1057.   We have held that, when considering the firsthand observations of law enforcement officers, "a magistrate is entitled to rely upon practical considerations of everyday life."   *Guerra v. State,* 897 P.2d 447, 456 (Wyo.1995).

[¶ 20]   Abeyta contends that multiple short visits observed by the law enforcement officers were never verified to be in furtherance of illicit activity and could have easily been for purposes of innocent conduct, such as the legal sale of personal property.   While this may be true, in light of the other facts set forth in the affidavit and the above-articulated standards by which we must review affidavits, we hold that the officers' statements regarding their observations, and any reasonable conclusions that could be drawn

therefrom, were proper factors to be considered in evaluating the totality of the circumstances surrounding the probable cause question. *See supra* ¶¶ 7–11.

[¶ 21] Next, Abeyta asserts information provided by a confidential informant, detailed in paragraph 6 of the affidavit, was never attested to as being given by reliable informants or corroborated by the officer's personal knowledge. With regard to the confidential informant, the affidavit provided:

6. On or about May 1, 2005, Rawlins Police Officer Hooper received information that Larry Abeyta had offered to provide a confidential informant with methamphetamine, and that Mr. Abeyta always carries in his waistband a silver, 9mm semi-automatic handgun. Mr. Abeyta told the confidential informant that he was aware the police department is watching him and his residence.

[¶ 22] Abeyta claims that the affidavit fails to provide information from which the warrant-issuing judicial officer could assess the veracity and basis of knowledge of the informant. With regard to the reliability and veracity of confidential informants, we have said:

When the secondary source person is a confidential informant, the veracity or reliability requirement is usually met by the recitation in the affiant's affidavit by either the primary source affiant or the secondary source law enforcement officer of previous instances in which the law enforcement officer obtained information from the confidential informant that led to arrests or convictions. In the absence of such a recitation, an acceptable substitute recognized by courts is the confidential informant's admission of activities against his penal interests contained in the information provided. With respect to the secondary source person's basis of knowledge, the affiant's affidavit must contain the raw data of that person's sense perception—what that person saw, heard, or smelled firsthand. It is from that secondary source's firsthand knowledge that the judicial officer will be able to draw conclusions about the existence or not of probable cause. If the affidavit fails to show how the secondary source person acquired his information, courts have applied the notion

of "self-verifying detail" to cure such a failure. Simply stated, the secondary source person's information is considered "self-verifying" if it describes the warrant-target's criminal activity in such sufficient detail that the judicial officer reasonably may know that he is relying on information more substantial than a casual rumor or an accusation based merely on general reputation.

*Rohda*, ¶ 8, 142 P.3d at 1160. We have not adopted any rigid test for the level of factual specificity necessary to corroborate the information provided by a confidential informant. We have simply said that the information from an informant must be based on more than mere "information and belief." *Cordova*, ¶ 15, 33 P.3d at 149.

[¶ 23] The affidavit here does not contain information regarding previous instances in which law enforcement officers obtained information from the informant that led to arrests or convictions, nor are there statements by the informant against his/her penal interests. Nevertheless, we conclude that the information provided by the confidential informant contains enough "self-verifying detail" to cure this failure. The confidential informant did not tell the officers that he/she believed Abeyta was a drug dealer, or that he/she had heard Abeyta sold drugs; instead, the informant specifically stated that Abeyta had offered to provide him/her methamphetamine. Additionally, the informant provided specific detail regarding the color, caliber, type and location of a handgun Abeyta carried with him. Finally, the informant stated that Abeyta was aware he was being watched by the police department.

[¶ 24] This detail, specifically describing Abeyta's criminal activity, strongly implies that the confidential informant had firsthand knowledge of what he/she was reporting. Based on the information provided, the judicial officer could reasonably know that he was relying on something more substantial than a casual rumor or an accusation based merely on general reputation. Thus, the confidential informant's report could have been properly considered as part of the totality of the circumstances showing probable cause.

[¶ 25] In Abeyta's final argument, he points to paragraphs 7–12 which describe an incident where a person recently leaving Abeyta's residence was arrested and in possession of methamphetamine. Abeyta contends the factual information detailed in paragraphs 7–12 fails to provide a nexus between the place to be searched (Abeyta's house) and the evidence sought (drugs and drug paraphernalia). With regard to this "nexus" requirement we have said:

> Probable cause justifying issuance of a search warrant involves a twofold finding. First, the factual situation must be sufficient to warrant a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed. Second, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the area or structure sought to be searched. *Cordova*, ¶ 12, 33 P.3d at 148. This second prong is often described as requiring a "nexus" between the contraband to be seized or the suspected criminal activity and the place to be searched. *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir.1998). It is "necessary that there be established a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched." Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 412 (4th ed.2004).

*Bouch*, ¶ 15, 143 P.3d at 648.

[¶ 26] Abeyta argues that the factual link between Abeyta's house and the methamphetamine eventually found on David M. Thomas was broken because there were no facts connecting the vehicle seen by the affiant at Abeyta's house to the vehicle eventually stopped. We disagree. Paragraph 7 of the affidavit details law enforcement officers' firsthand observations and interactions with Mr. Thomas, and in part reads as follows:

> I then observed the dark-colored car start up and drive off, heading South on McKinley Street, turning to travel East on Center Street. The vehicle then turned to travel North on Washington Street. At that point, I informed officers that the vehicle had left the area and described the vehicle. At this same time, the vehicle was turning in front of Rawlins Police Department Officer Reynolds, and was observed

to be traveling 28 miles per hour in a fifteen mile per hour zone.

[¶ 27] The affidavit indicates that Officer Hill maintained visual contact with Mr. Thomas' vehicle from the time it left Abeyta's residence until it was eventually stopped. Abeyta apparently assumes that because Officer Hill informed officers that the vehicle had left the area, Officer Hill must have lost contact with the vehicle at that point. This is not what the affidavit states; rather, the affidavit indicates that at the same time Officer Hill informed that the vehicle had left the area, he observed the vehicle turn in front of another police officer.

[¶ 28] Contrary to Abeyta's contention, the affidavit demonstrates that the vehicle that left Abeyta's house was the same vehicle eventually stopped. Therefore, there exists a sufficient factual nexus between the suspected criminal activity, the contraband to be seized, and the place to be searched.

## CONCLUSION

[¶ 29] Although one of the statements contained in the affidavit—the description of individuals as "known drug users"—lacked a sufficient factual basis to be considered reliable, this defect was not fatal to the affidavit as a whole. Based on our review of the totality of the circumstances—as reflected within the four corners of the affidavit—we conclude that the factual information set forth therein provided a substantial basis for the warrant-issuing judicial officer's finding of probable cause. Said another way, we conclude that, based on the information contained in the affidavit, a reasonably cautious and prudent person would believe there was a fair probability that a crime was being committed or had been committed at Abeyta's residence. Therefore, we affirm the conviction and sentence.

[¶ 30] Affirmed.